O. D. WADDELL et al., Appellees, v. BOARD OF DIRECTORS OF
AURELIA CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,
Appellant, et al., Appellee.

**SCHOOLS AND SCHOOL DISTRICTS:** Schoolhouse Sites—Abandonment—Prior Right to Purchase. Schoolhouse sites, after abandonment for two years for school purposes, revert, under Sec. 2816, Code Supp., 1913, upon payment of the original purchase price plus the value of the improvements, to the person who, at the time of the abandonment, is owner of the tract from which such site was originally taken; and this is true whether the school corporation acquired such site (1) by full warranty deed, or (2) by condemnation proceedings, *and irrespective of the law governing reversion in force when the sites were so acquired.*

SALINGER, J., dissents.

**COURTS:** Opinions—Dicta. When a holding is based on two grounds, either one of which would have been sufficient, it may not be said that either holding is dictum.

**DEEDS:** Fee Simple for Private and Public Purposes Contrasted. Distinction recognized between a fee-simple title acquired by an individual grantee for private uses, and a fee-simple title acquired by a *public* corporation for *public* uses.

**CONSTITUTIONAL LAW:** Vested Rights—Public Corporations. No constitutional right is violated by permitting a *public* corporation—a mere creature of the state—to acquire property under absolute title, and later, by amendatory legislation, to provide that such property shall be held *conditionally.*

**STATUTES:** Construction—"Owner." A statute which provides that a schoolhouse site shall, under named conditions, revert "*to the owner of the tract from which it was taken,*" refers to the person who is owner of the tract when the abandonment became complete. (Sec. 2816, Code Supp., 1913.)

**SCHOOLS AND SCHOOL DISTRICTS:** Schoolhouse Sites—Sale. The right of the voters of a school corporation "to direct the sale or make other disposition of any schoolhouse or site" is subject to the prior right of the proper landowner to purchase an abandoned schoolhouse site. (Sec. 2749, Code, 1897.)

SALINGER, J., dissents.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

DECEMBER 13, 1919.

REHEARING DENIED DECEMBER 20, 1920.

SUIT in equity by five plaintiffs to enjoin the board of directors of a rural school district from selling to others than the plaintiffs five certain schoolhouse sites, in violation of the rights of the respective plaintiffs under the provisions of Section 2816 of the Code. The general nature of the defense was that the school district held an absolute fee title to its school sites, and that, therefore, Section 2816 and its parent statute were not applicable. There was a decree for the plaintiffs. The defendant appeals.—*Affirmed.*

*F. F. Faville,* for appellant.

*Molyneux & Maher,* for appellees.

EVANS, J.—The facts in the case were all stipulated. The defendant district had abandoned five rural schoolhouse sites. The plaintiffs are the several owners, respectively, of the farms from which said sites were respectively taken.

1. SCHOOLS AND SCHOOL DISTRICTS: schoolhouse sites: abandonment: prior right to purchase.

The plaintiffs claim the right, therefore, under the provisions of Section 2816 of the present Code, to accept the option provided in such section, and to take the respective sites on the conditions therein specified. The defendant denies the applicability of such section. One ground of such denial is that the school sites were acquired before the enactment of the present statute; that, in any event, only the statute in force at the time of such acquisition could be held applicable. This was the parent statute, Chapter 124, Acts of the Thirteenth General Assembly, later incorporated in the Code of 1873 as Sections 1825, 1826, 1827, and 1828. It also denies the application of this statute on the broad ground that it was not intended to apply to a case

where the school district held the absolute fee-simple title of the school site.

The trial court followed our holding in *Hopkins v. School District*, 173 Iowa 43. In that case, we held that the provisions of Section 2816 were applicable to "any real estate" held by a rural school district for schoolhouse purposes, regardless of the method of acquiring title. It is urged by appellant that to so construe Section 2816 would render it unconstitutional, in that it impairs the property rights of defendant. It is further urged that such holding was not necessary to the result in the *Hopkins* case, and that, therefore, the holding was dictum. It is true that the result in the *Hopkins* case was based upon two grounds, either one of which would have been sufficient. Does that fact render one of the grounds a dictum? If so, which one? While it is true that the result in the *Hopkins* case could have been made to rest upon the other ground alone, so it could have been made to rest upon this ground alone. If the first ground is open to challenge in this case as mere dictum, the second ground is likewise open to challenge in some other case as mere dictum. We must, therefore, face the question whether this particular ground of holding in the *Hopkins* case should be overruled. We pass, then, to the real merits of the contention.

2. COURTS: opinions: dicta.

The argument for appellant takes a broad scope, and is very helpful to us in a reconsideration of the opinion in the cited case.

For convenience of reference, we set out here, so far as necessary, the sections of the statute under consideration, being Sections 2814 to 2816, inclusive, of the present Code:

"Sec. 2814. Any school corporation may take and hold so much real estate as may be required for schoolhouse sites, for the location or construction thereon of schoolhouses and the convenient use thereof, but not to exceed one acre, except in a city or incorporated town it may include one block exclusive of the street or highway, as the case may be, for any one site, unless by the owner's consent, which site must be upon some public road already established or procured by the board of directors, and shall, except in cities, incorporated towns or villages, be at least forty rods from the residence of any owner who objects

to its being placed nearer, and not in any orchard, garden or public park.

"Sec. 2815. If the owner of the real estate desired for a schoolhouse site, or a public road thereto, refuses or neglects to convey the same, or is unknown or cannot be found, the county superintendent of the proper county, upon the application of either party in interest, shall appoint three disinterested referees, * * * such referees shall inspect the grounds proposed to be taken, fix the damages sustained as near as may be on the basis of the value of the real estate so appropriated," etc.

"Sec. 2816. In the case of nonuser for school purposes for two years continuously of any real estate acquired for a schoolhouse site it shall revert, with improvements thereon, to the owner of the tract from which it was taken, upon repayment of the purchase price without interest, together with the value of the improvements, to be determined by arbitration, but during its use the owner of the right of reversion shall have no interest in or control over the premises."

The parent statute, enacted in 1870, was incorporated substantially in the Code of 1873 as Sections 1825 to 1828, inclusive, as follows:

"Sec. 1825. It shall be lawful for any district township, or independent district, to take and hold under the provisions contained in this chapter, so much real estate as may be necessary for the location and construction of a schoolhouse and convenient use of the school; provided, that the real estate so taken, otherwise than by the consent of the owner or owners, shall not exceed one acre.

"Sec. 1826. The site so taken must be on some public highway, at least forty rods from any residence, the owner whereof objects to its being placed nearer, and not in any orchard, garden, or public park. But this section shall not apply to any incorporated town.

"Sec. 1827. If the owner of any such real estate refuse or neglect to grant the site on his premises, or if such owner cannot be found, the county superintendent of the county in which said real estate may be situated, shall, upon application of either party, appoint three disinterested persons of said county,

\* \* \* who shall, \* \* \* inspect said real estate and assess the damages, \* \* \*

"Sec. 1828. The title acquired by said school districts in and to said real property, shall be for school purposes only, and in case the same should cease to be used for said purpose for the space of two years, then the title shall revert to the owner of the fee, upon the repayment by him of the principal amount paid for said land by said districts, without interest, together with the value of any improvements thereon erected by said districts; provided, that during the time said site is used for school purposes, the owners of the fee shall not injure or remove the timber standing and growing thereon."

The school sites in controversy were acquired at various dates from 1871 to 1886, when the sections of the Code of 1873 were in force, and before the enactment of the present sections of the statute. These sites were acquired by warranty deeds, with full covenants of warranty. No reservations to the grantor of any kind were included therein. The argument for the appellant may be briefly summarized as follows:

(1) That, by its warranty deeds, the defendant took an absolute and indefeasible fee title.

(2) That, if either statute is applicable to the case, it must be the one which was in force at the time the property was acquired; that to apply the subsequent statute would be to take away the defendant's property without due process of law, in violation of both Federal and state Constitutions.

(3) That the statutes in question can be deemed only to apply to school sites acquired by condemnation, or to easements acquired by grant.

(4) That Section 2749 of the present Code, and Section 1717 of the Code of 1873, expressly conferred upon the electors the power of directing sale of schoolhouse property, and that to apply Section 2816 or its parent statute to this case would be to violate the provisions of Section 2749. We shall consider briefly each of the foregoing propositions.

I. There is no real occasion that we deal with the first proposition. There is no question but that this rural school district acquired by its warranty deeds as absolute a title as it was in the power of the grantor to convey, and in the corporate capacity of the grantee to take. The difference, if any, between

a fee-simple title acquired by an individual grantee for private

3. DEEDS: fee simple for private and public purposes contrasted.

uses and the fee-simple title acquired by a public corporation for public uses sometimes involves nice distinctions. That such a distinction is frequently recognized is indicated in the following authorities: *Hill v. Western Vt. R. Co.*, 32 Vt. 68, 74; *New York Cent. & H. R. R. Co. v. Aldridge*, 135 N. Y. 83, 95 (17 L. R. A. 516, 32 N. E. 50); *Norton v. London & N. W. R. Co.*, L. R. 9 Ch. Div. 623.

Whether the limitation in such case is upon the *title* conveyed to the public corporation, or whether it is a limitation upon the *right and capacity of the corporation to continue* in the exercise of the grant after its public uses have ceased, is a fair field of debate, and we need not enter upon it.

Without passing affirmatively or negatively upon appellant's first proposition, we will assume its correctness, for the purpose of this discussion.

II.  Which statute, if either, must be deemed applicable herein? It will be noted that the principal difference between these statutes, in their reversion provisions as we have above

4. CONSTITUTIONAL LAW: vested rights: public corporations.

set them forth, is that, under the first one, the so-called reversion went to the "owner of the fee," whereas, under the present statute, the reversion goes to the "owner of the tract" from which the site was taken. Both the parent statute and the present statute appear by their terms to be applicable to rural school districts only. They contemplated the carving of school sites out of farms, and the restoring of the sites back to the farm when school uses ceased. It will be seen that there is no substantial difference in the two statutes, so far as the rights of the school district are concerned. They might bear different constructions as to the beneficiaries of the reversion. The contention of the defendant is that, under the old statute, the grantor was the "fee owner," within the contemplation thereof. The plaintiffs herein are not original grantors. They are simply the owners of the respective tracts from which the sites were taken, without any paper claim, through the defendant's grantor, to any interest in the school site. It is argued, there-

fore, that, if the school sites are subject to reversion, the reversion is not to these plaintiffs.

The argument that we are governed now by the statute in force when the school sites were acquired is, on its face, a plausible one. Likewise, the argument that, the rights of the parties having been settled and vested by the warranty deeds, no subsequent legislation could impair such vested rights, because of constitutional inhibition. But this loses sight of a fundamental fact in this case. The defendant is a school corporation. It is a legislative creation. It is not organized for profit. It is an arm of the state, a part of its political organization. It is not a "person," within the meaning of any bill of rights or constitutional limitation. It has no rights, no functions, no capacity, except such as are conferred upon it by the legislature. The legislative power is plenary. It may prescribe its form of organization and its functions today, and it may change them tomorrow. It may confer or withhold power to take title to real estate. Conferring such power, it may qualify it, both as to the title and tenure of the real estate. It may dissolve the corporation at any time, and may direct the disposition of its property.

If any rights arose out of any conveyance at the time thereof to any *person* other than the district township, such rights could not be impaired by subsequent legislation. As to the rights of the school corporation, these *could* be impaired and diminished by subsequent legislation. So far as disclosed, no right arose to anybody out of the conveyances, except to the school corporation. As to the parties who might ultimately become entitled to a reversion under the provisions of the statute then existing, no right then vested. The legislature could thereafter have repealed the provision for reversion, without violating the rights of anyone. It could have again enacted different provisions pertaining to reversion, without violating the rights of anyone. In other words, no one then had a vested right in the future operation of the statute. When the rights of these claimants finally vested by nonuser, they took even then by statutory grace, and not by any right outside of the statute. Inasmuch, therefore, as no vested rights were involved, and inasmuch as the power of the legislature over the school

corporation was plenary and continuing, it has precisely the same right, as to the corporation, to enact amendatory legislation as it had to enact the original legislation. Necessarily, the school corporation became at once amenable to the new legislation.

To put it in another way, the school district can purchase property only through the aid of the legislative power of taxation; and its property, so acquired, remains subject always to the legislative mandate. We think, therefore, that, as a matter of law, the existing statute is controlling.

III. Do the provisions of Section 2816 of the present Code apply to lands granted? The burden of appellant's argument has been devoted to a construction of Section 1828 of the Code of 1873. Much of the argument, however, might be deemed fairly applicable to Section 2816. This latter section applies in terms to "any real estate acquired for a schoolhouse site." There is nothing in the terms of the statute itself which tends to eliminate from its scope lands acquired by conveyance. Are lands conveyed by warranty deed to a school corporation to be recognized as "real estate acquired?" If yea, it comes within the exact terms of the statute. It will be noted from the preceding sections that acquisition by conveyance was contemplated as the primary method. The acquisition by condemnation was an alternative, to be resorted to in case of refusal of the landowner to convey. We find nothing in the terms of any of these sections that would permit us to say that "any real estate *acquired*" must be restricted to real estate *condemned*. Let it be noted further that the condition of repurchase imposed upon the taker of the reversion by Section 2816 requires repayment of "the purchase price." This language implies a previous purchase and a grant.

It is argued that because, in the case of condemnation, the fee remains in the original owner, then, when the public use pursuant to the condemnation has ceased, the original owner holds his land by his original title, and free from the abandoned use to which it had been condemned; but that, on the other hand, where the owner conveyed his land by warranty deed, he has retained nothing through which he can claim a reversion; and that, therefore, the reversion statute can have no application

to a conveyance by warranty. If this were a contest between contending claimants, the argument might have its importance. If one of these school sites had been condemned, and the present owner of the tract were claiming the reversion of the school site, without, however, having acquired any right from the original owner, an interesting question might be presented as between them. As between them, there would be limitations upon the power of the legislature to deprive either of them of his property. Likewise, if one of these sites had been acquired by grant, with a reservation of reversion when the school use had ceased; and if such grantor were now claiming such reversion under his deed, as against the owner of the tract from which the land was taken, then constitutional questions might easily be involved; but we have nothing of that kind. Confessedly, the grantors parted with everything. Any future claim for them by reversion must rest, not upon their deeds, but upon the statute, if any. While the right to take these school sites is denominated in the statute a right of reversion, it is not strictly such, in a legal sense. It is simply a statutory right of purchase, upon certain specified conditions. The statute was not enacted as a matter of right to particular claimants, but as a matter of public policy. The statute being enacted, the rights of these claimants arise under it, and not outside of it. It does not purport to determine or impair existing rights of any person. It is simply the exercise of the power of the legislature over the school corporation and over its property. Granting that the corporation took an absolute fee-simple title, yet this would not thereby carry such title beyond the power of the legislature; so that, whatever the method of acquisition, and whatever the nature and extent of the title acquired by the school corporation, the decisive fact remains that it never gets beyond the power of the legislature to disqualify it from holding title to schoolhouse sites after school uses have ceased.

IV. But it is argued that the plaintiffs must recover, if at all, upon the strength of their own title, and not upon the weakness of that of the defendant. The significance of this proposition is that it is contended that the original grantors, being the original owners of the tracts from which the school site was taken, are the

5. STATUTES: construction: "owner."

proper claimants for this right of reversion. This claim is predicated upon the terms of the statute. The claim is that the word "owner," as used in the statute, refers to the former owner, and not to the present one. A like question was before this court in *Smith v. Hall*, 103 Iowa 95, wherein the reversion statute of railroad right of way, being Section 1260 of McClain's Code of 1888, was construed. The provision therein construed was almost identical with the provision in the statute before us. The word "owner" was there construed as meaning the owner at the time of the reversion, and not the original owner. We see no reason why a different construction should be adopted in the present case. Upon the face of this record, no existing rights of any other person are in any manner impaired by the operation of this statute according to its terms. No constitutional question as between conflicting claimants is, therefore, involved.

V. It is further argued that Section 2749 of the Code was wholly overlooked by us in the consideration of the *Hopkins* case, and that its provisions are such as to wholly negative the construction which we put upon Section 2816 in the *Hopkins* case.

6. SCHOOLS AND SCHOOL DISTRICTS: schoolhouse sites: sale.

The portion of such section thus relied on is Subsection 2, which is as follows:

"Sec. 2749. The voters assembled at the annual meeting shall have power: * * *

"2. To direct the sale or make other disposition of any schoolhouse or site or other property belonging to the corporation, and the application to be made of the proceeds of such sale; * * *"

The argument is that this subsection confers upon the voters the power to direct the sale of school sites; that this implies that the district townships own school sites which they have a right to sell; and that this implication is contradicted by the construction adopted by us in the *Hopkins* case. It will be noted that the power conferred upon the voters is to "direct the sale or make other disposition" of any schoolhouse or site, etc. "Sale or other disposition"—what other disposition than a sale could be contemplated by the statute? Surely, no power of barter or trade for cattle or horses was contemplated. The "other disposition" may have been the very provisions of the

statute pertaining to reversion. What are these provisions? Do they cast title upon the claimant as a matter of law? Not at all. They amount simply to an option to him to purchase the school site for the original purchase price, on condition that he will pay also for the improvements at their value. It must be accepted as a possibility that such an option might sometimes be rejected. For more than a score of years, while this statute was in force, in many localities in the state the value of acres of land had little increase, and the weight of the temptation afforded by the statutory option was not overwhelming. In the event of the rejection or waiver of the option, the statutory provision as to a reversion ceased to operate, and the property would become wholly subject to sale by vote of the electors. Moreover, if every school site of every district township in the state had been subject to option, and every option had been accepted by the appropriate person, so that no sale of school sites could take place by vote of the electors, this would not render Section 2749 contradictory to the construction which we put upon Section 2816 in the *Hopkins* case. The legislature could not foresee whether all such options would be thus taken or not, and it was appropriate and consistent that it should make provision for either contingency. We think, therefore, that there is no contradiction between our construction of the statute and Section 2749. Such section has its appropriate field of operation upon either construction of Section 2816.

In conclusion, we may summarize: No contractual rights of persons are involved herein; the rights of the plaintiffs are purely statutory; and the obligation of the school district to respond to the statute rests upon the legislative supremacy over the school district and its property. The judgment entered below must be—*Affirmed*.

LADD, C. J., WEAVER, GAYNOR, PRESTON, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). I. What right have these plaintiffs to enjoin this sale? Grant the general proposition that the word "owner," as used in the reversion statute, ordinarily refers to the present owner. What is to be said where it appears

conclusively that the claimant is not the present owner? What is to be done with those deeds which expressly excepted the land in question from the deed? It is undisputed that, in all the conveyances through which the plaintiffs claim title, no deed "assumed or pretended to convey any interest in the said one acre of land, and the said one acre was excepted from each of said conveyances." The answer makes the affirmative defense that the plaintiffs have never received any conveyances of the premises in question from any person, "but that the said sites were excepted from the several deeds and conveyances under and by which the several plaintiffs acquired their interest in the said several tracts of land now owned by them, and the defendants specifically deny that the plaintiffs or either of them have any interest of any kind or character in and to the several tracts of land described in the petition, or either of them." Whatever else may be said, these plaintiffs have no standing to maintain this suit, and there should be a reversal on that account alone.

II.    It seems the trial court based its decision on *Hopkins v. School District*, 173 Iowa 43. It is unnecessary for me to contend that the *Hopkins* case is dictum, in so far as it is relevant to this suit, or to go into the question of the effect that the decision was on two grounds. My contention is that, where a case rules that there is right to recover on contract because said contract is equivalent to a certain statute right, and further rules that the statute right is also maintainable, it does not settle what the holding would be where the claimant did not have such contract rights. I further contend that, with the *Hopkins* case in that condition, the question before us now is an open one, and that the legislature did not intend to give a reversion, except where the taking was by condemnation. And it is easy to see why, when land is, in a sense, forcibly taken from one who does not wish to part with it, and is taken because of public policy, which favors schools, that, the moment the only use for which the land was taken ceases, it should revert to the very owner, who has never lost fee title. In that connection, let me suggest that the statutes under consideration use "taken," mostly, suggesting a legislative intention to allow reversion only for lands that were seized, rather than voluntarily granted.

While it is easy to see why the legislature might, in good conscience, enable one from whom use had been seized for a special purpose to repossess himself when that use ceased, it is not so easy to believe that it was intended to give the like right to one who had voluntarily sold the land, warranted the title, put no limitations in the deed, and put the purchase price in his pocket. No good reason appears why, in these circumstances, he should be able to take back what he had wholly parted with, so far as he was able to, by merely offering the purchase price, without interest, and the true value of the actual improvements. According to the history of the state, this, as matter of common knowledge, would, in nearly every case, mean the obtaining of property for greatly less than it was worth.

III. The majority plants itself squarely on the proposition that the school district got as much absolute title as it was in the power of the grantor to convey, and in the corporate capacity of the grantee to take. Reduced to simple terms, this involves two statements. One is the inferential one that an owner of land has no power irrevocably to part to a school corporation with title to lands he owns. I can see no basis in reason for such a position. So far as the owner of land is concerned, there is no law limiting his power to part with his land forever; and it is my view that, when he has done so, he is estopped to say, directly or indirectly, that, under any circumstances, the title should be restored to him. That is one reason why I think that the legislature never thought of restricting that power of alienation. The other part of the proposition is that the school corporation can, in no event, acquire an absolute title. As I have already indicated, if that be assumed, it does not carry the owner who has alienated the land one step forward. Assuming that the school corporation cannot hold the land, it does not follow that it may be restored to him. At this writing, I am at some loss to reconcile this pronouncement with the holding in *Consolidated School Dist. v. Thompson*, 171 N. W. 16, wherein it is held that the district may retain the school sites after their abandonment, because of an estoppel upon the former owner. If there is no power to hold the land, the disabilities of the former owner are of no consequence.

The provisions of Section 2749 that, among other things, the

electors have power to order the sale of a school site, and to order what application shall be made of the proceeds of such sale, has bearing on what I have just said, that abandonment does not necessarily work a reversion, as against the former owner. I can see no infraction of public policy in not permitting the land to revert to an owner who has conveyed the fee voluntarily, and taken the purchase price. What the *state* might do if the proceeds of selling the abandoned sites were attempted to be devoted to some use to which the school corporation had no right to devote them, is not a question in this case. As between the owner, who has sold and been paid, the school district should at least have the right to sell this property, and devote the proceeds to the promotion of school purposes. Surely, that does not violate any public policy.

IV. I think the provisions of Section 2749 are highly significant. They give the electors power "to direct the sale or make other disposition of *any* schoolhouse or site * * * and the application to be made of the proceeds of such sale." The grant of power is in broad language. Ordinarily, the word "any" in statutes means "any." On the reasoning of the majority, however, there is scarcely a thing on which this broad power may operate. I commend the courage of the declaration that, even if no condition could be imagined under which a sale of school sites could be ordered by vote of electors, that then the statute which gives the power to sell would still not be an argument for the proposition that the reversion statute was not operative in case of a full sale like the one at bar. But it seems clear rather than sound. Usually, the power to sell implies something to sell. Be that as it may, I am unable to see that, on the theory of the majority, the selling statute has anything tangible to operate on. The appellees say its sole field of operation is school sites that were acquired prior to 1870, before the present law existed, and at a time when they concede absolute title could be obtained. I think that is too narrow a field for a statute giving power to sell "any" school site. The only other suggestion of a place for the selling statute to operate is in the almost unimaginable case where the former owner would refuse to take back Iowa land sold years ago, by repaying the price obtained

years ago, without interest, plus the true value of the improvements on the land.

It is said the words "other disposition" found in the selling statute may have reference to the very provisions of the statute which pertain to reversion. The trouble is that, for the purposes of the reversion statute, there is no disposition to make, and nothing for the electors to do. When the use is abandoned, then, in all the cases where there is a right to reversion, it is automatic. The former owner has the absolute right, by making a stated payment, to have the title, and whether to give it to him or not is not a matter that can ever come before the electors at their meeting.

I would reverse.