ALFRED D. SMITH, APPELLANT, v. THEODORE JOHNSON ET AL., APPELLEES.

FILED JULY 21, 1920. No. 21063.

Schools and School Districts: EXPULSION OF PUPIL. The district board of a school district may invite the patrons and legal voters residing in the district to a special meeting of the board to confer with it upon the question whether a pupil charged with "gross misdemeanors" shall be expelled pursuant to section 6785, Rev. St. 1913. That the persons so invited joined with the board members in voting on the question of expulsion will not impair the vote of the board on that question, nor its action of expulsion, notwithstanding the director kept no formal record of the meeting.

APPEAL from the district court for Box Butte county: WILLIAM H. WESTOVER, JUDGE. .*Affirmed,*

*Lincoln Frost, F. D. Williams, W. M. Iodence* and *E. C. Barker,* for appellant.

*Mitchell & Gantz, contra.*

DEAN, J.

Alfred D. Smith, plaintiff, was 12 years of age when, by his next friend and legal guardian, Miss Charlotte Worley, he began this action against Theodore Johnson, Charles Tuchek, Mrs. Flora Bergfield, Joseph Reiman and William Kiester, defendants, as alleged in plaintiff's brief, "to recover damages in the sum of $2,500 for humiliation and injury by reason of a wrongful, malicious and illegal expulsion from school." Defendants recovered a verdict and judgment of dismissal and plaintiff appealed.

Theodore Johnson was director, Charles Tuchek, moderator, and Mrs. Flora Bergfield, treasurer, of school district number 30 in Box Butte county. This action was brought against them as individuals and not as officials. Reiman and Kiester were patrons of the school and were made parties defendant because of alleged active participation in plaintiff's expulsion. Miss Worley was a legal resident of the school district, and plaintiff, who resided with her in 1917, was one of the pupils.

The testimony, though contradicted, tends to show that plaintiff was rude and disobedient at home, and that he and his younger brother Earl cursed their benefactress and called her vile names. With respect to his behavior at school the evidence, though denied by plaintiff, tends to prove that he was quarrelsome, disobedient and unruly; that he used profane language when in the hearing of the pupils; and that he was uncouth and given to obscenity; that he wrote obscene and suggestive language on paper slips and handed them to girls of 10 and 12 years, and that he used vulgar language in their presence, and that his remarks to them were grossly obscene. Some of this evidence was developed on the cross-examination of pupils who were called by defendants as witnesses. There is more evidence of like tenor that need not be discussed here.

Section 6785, Rev. St. 1913, provides for the expulsion of a pupil by the district board for contumacious conduct. The statute follows: "They may authorize or order the suspension or expulsion from the school, whenever in their judgment the interests of the school demand it, of any pupil guilty of gross misdemeanors or persistent disobedience, but such suspension shall not extend beyond the close of the term."

Plaintiff argues that the real point at issue is this: "Did the school board ever hold a legal meeting in which Alfred Smith was expelled?" He contends that if it had been a legal meeting the director would have kept a rec-

ord. He cites section 6771, Rev. St. 1913, which provides:
"The director shall be clerk of the district board and of
all district meetings when present, but if he shall not be
present, the qualified voters may appoint a clerk for the
time being who shall certify the proceedings to the direc-
tor to be recorded by him."

The weight of the evidence tends to establish these
facts: Miss Uhrig, who was the teacher in charge of the
school, complained to the board members that, owing to
unsatisfactory conditions in the school, she was unable
to do good work and that they should get another teacher
and relieve her. Upon inquiry and investigation by the
board it developed that the trouble centered about plain-
tiff's conduct in school. A few days after the complaint
was made, namely, December 21, 1917, a community en-
tertainment was held at the schoolhouse that was largely
attended by the patrons of the school and citizens gener-
ally. At the close of the entertainment Mr. Johnson, the
director, announced that the school board would hold
an important meeting the next evening at the school-
house and invited the patrons and the public to attend.
At the appointed time Mrs. Bergfield, treasurer, Director
Johnson, Moderator Tuchek, Joseph Reiman and William
Kiester, being all of the defendants herein, and many
patrons and citizens of the district were at the school
house. The meeting was called to order by Director John-
son, who presided at the request of Moderator Tuchek.
Mr. Johnson then stated to the persons present what the
teacher had told the board members about Alfred's con-
duct in school and that she was about to resign "because
she could not teach on account of Alfred and Earl Smith,"
Earl being a younger brother. It seems that a general
discussion followed Johnson's statement. When the dis-
cussion came to an end, defendant Reiman moved for
expulsion, the motion being seconded by defendant Kies-
ter. At this point Johnson called for a rising vote on
the motion for expulsion, and, with the exception of a

relative of plaintiff's guardian, all present voted for expulsion by rising. Mrs. Bergfield, the treasurer, testified that she and Director Johnson, in the absence of Moderator Tuchek, met at her home two days before the meeting of December 22 and upon consideration of plaintiff's conduct they reached the conclusion that he should be expelled. No record was kept of that meeting nor of the meeting of December 22. Mainly because of the absence of such record plaintiff argues that the court erred in not informing the jury that plaintiff was entitled to a verdict and that the only question for them to determine was the amount of the recovery. In the present state of the record and in view of the law applicable thereto, it seems to us that the ruling of the court was without error.

Illinois has a statute which provides that the clerk of the board of school directors "shall keep a record of all the official acts of the board." Rev. St. Ill. 1891, ch. 122, sec. 137. Another section (section 139) reads: "No official business shall be transacted by the board except at a regular or special meeting." In *Pollard v. School District,* 65 Ill. App. 104, the statutes herein cited were under consideration in a suit relating to a contract of employment of a teacher by the board. The court said: "The directors met specially for the purpose of considering this matter, and while their session was somewhat informal, and while it does not appear that a record of it was made, yet we think it was a special meeting at which they might legally transact official business." In passing it may be noted that the Illinois statute differs from ours in that it specifically provides that the clerk of the board "shall keep a record of all the official acts of the board," while our statute merely provides that "the director shall be clerk of the district board" without expressly prescribing his duties as clerk of such board. The act does, however, expressly provide that "the proceedings" of "all district meetings" shall be recorded by the director.

A situation somewhat similar, but less aggravating as to the offense, arose in Massachusetts under an act which provides: "The school committee shall appoint a secretary and keep a permanent record book, in which all its votes, orders and proceedings shall by him be recorded." Gen. St. Mass. 1860, ch. 38, sec. 22. In 1874 the Massachusetts act was construed in *Russell v. Inhabitants of Lynnfield*, 116 Mass. 365, in an action where a pupil's exclusion from school attendance for a minor offense was under consideration. The court said: "For the disobedience of a regulation established to prevent tardiness, the plaintiff was suspended from a public school until she should conform to the rule. This action is brought under the statute which declares that 'a child unlawfully excluded from any public school shall recover damages therefor in an action of tort, to be brought in the name of such child by his guardian or next friend against the city or town by which such school is supported.' Gen. St. c. 41, sec. 11. * * * The school committee are required to have the general charge and superintendence of all the public schools in town, and to keep a record of their votes, orders and proceedings. Gen. St. c. 38, secs. 16, 22. But this does not imply that all rules and orders required for the discipline and good conduct of the schools shall be matter of record with the committee, or that every act in regard to the management of each school in these respects should be authorized or confirmed by formal vote. It would be practically impossible sufficiently to provide for such matters by a system of rules, however carefully prepared and promulgated. Much must necessarily be left to the individual members of the committee and to the teachers of the several schools. *Huse v. City of Lowell*, 10 Allen (Mass.) 149; *Hodgkins v. Inhabitants of Rockport*, 105 Mass. 475."

The district school board is charged with the general care of the school, but we do not think the law contemplates that the board should be censured or penalized for

inviting the patrons and citizens of the district to attend its meetings and counsel with its members. The rural school district is a democratic unit of government. It follows that its officers are and of necessity must be in close touch with all.the citizens of the community and perhaps more especially with those who, as patrons, are most vitally and immediately interested in the welfare of the school.

Counsel for plaintiff finally argues that his constitutional right to attend school was violated when he was expelled. He cites section 6, art. VIII of the Constitution, which reads: "The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years."

It will not be seriously contended that the fundamental law contemplates the attendance at a public school of any pupil who, by reason of contumacious conduct, will not avail himself of the opportunity for free instruction there offered to the youth of the state. If plaintiff's schoolmates told the truth, and evidently the jury believed them, his conduct was such that his attendance and his presence among them was not only a hindrance to their advancement but was as well a postive menace to the morals and to the safety of pupils who attended the school to avail themselves of the instruction that is guaranteed by the Constitution.

The action of the board, in voting for expulsion, was a reasonable exercise of the power conferred upon it by the legislature for the preservation of morality and discipline in the school. 24 R. C. L. 646, sec. 105 et seq; 35 Cyc. 819. The district board of a school district may invite the patrons and legal voters residing in the district to a special meeting of the. board to confer with it, upon the question as to whether a pupil charged with "gross misdemeanors" shall be expelled pursuant to section 6785, Rev. St. 1913. That the persons so invited

joined with the board members in voting on the question of expulsion will not impair either the vote or the action of the board on that question notwithstanding the director kept no formal record of the meeting. That plaintiff committed gross misdeameonors and that he was a fit subject for expulsion sufficiently appear. The evidence, though somewhat conflicting, amply supports the verdict.

Other alleged assignments of error are discussed in the brief of counsel, some relating to instructions and some to the admission of certain evidence. Upon examination we do not find reversible error.

The judgment is

AFFIRMED.