J. L. MAXWELL et al., Appellants, v. GLENN CUSTER et al., Appellees.

No. 47150.

DECEMBER 16, 1947.

Fred Louis, Jr., and Bennett Cullison, both of Harlan, for appellants.

More & More, Hines & Higgins, and George O. Hurley, all of Harlan, for appellees.

BLISS, J.—In the preparation of the printed record little regard has been given to the rules of abstracting. Of about sixty pages of testimony approximately forty pages are set out in needless questions and answers.

Defendants contend that the sale of the one-acre school site and schoolhouse to Glenn Custer, the present owner of the tract or quarter section from which the site was taken, was proper under the record and within the provisions of section 297.15, of the 1946 Code, which is:

"Reversion of schoolhouse site. Any real estate owned by a school corporation, situated wholly outside of a city or town, and not adjacent thereto, and heretofore used as a schoolhouse site, and which, for a period of two years continuously has not been used for any school purpose, shall revert to the then owner of the tract from which the same was taken, provided that said owner of the tract last aforesaid shall, within the time hereinafter prescribed, pay the value thereof to such school corporation."

Section 297.16, Code, 1946, provides that if the school cor-

poration and said tract owner do not agree upon the value, the county superintendent of schools shall appoint three disinterested voters of the county to appraise the site.

It is the contention of plaintiffs that the above-quoted sections have no application because the closing of the school was only temporary on account of small attendance. They rely upon section 297.21, Code, 1946, which provides: "This and sections 297.15 to 297.20, inclusive, shall not apply to cases where schools have been temporarily closed by law on account of small attendance." Plaintiffs insist that the only reason for closing the school was the lack of sufficient attendance, and that no valid deed to the property could be executed except upon the direction of the electors in the school district, as provided in section 278.1 of chapter 278 of the 1946 Code, entitled "Powers Of Electors," which section states:

"Enumeration. The voters at the regular election shall have power to: 1. * * * 2. Direct the sale, lease, or other disposition of any schoolhouse or site or other property belonging to the corporation, and the application to be made of the proceeds thereof."

Since the controlling factors in the case, and the only factual issues in dispute, are the purpose in not using the school for the period stated in section 297.15, and the reasons therefor, a statement of the facts is necessary.

Center Township lies near the city of Harlan. A part of it is occupied by the city, thereby reducing the eight subdistricts usually found in a township to seven. The school site involved in this case is in Subdistrict No. 1. The school district acquired title to the school site by deed dated May 30, 1872. It is a straight warranty deed, with no conditions or reservations of any kind. The quarter section of the grantors came down by mesne conveyances until the title rests in the defendant Custer. There have been very few children of school age in the subdistrict for several years. Most of the heads of families in the subdistrict are past middle age and more than fifty years old, and their children have grown up and passed beyond school age. Inquiry was made as to every family in Subdistrict No. 1, including the plaintiffs and defendants, for a number of years

back, and the testimony was that no family had children between school grades one to eight, inclusive, but Kilpatrick, who had one, and Grabill, who had three. There has been no school interest in this subdistrict for several years. Township school districts elect their directors annually, but for eight or more years no one had been a candidate for director in No. 1. During those years it had been necessary for the board to appoint someone to the office. At the annual meeting in July 1942 Gale Grabill accepted the appointment. No repairs had been made on the schoolhouse for a number of years. It had not been painted for ten or more years. Many of the children in the township attended the schools in Harlan. In 1946 school was held in four subdistricts in the township, and in 1945 school was held in but three subdistricts in the township. School busses had been going through the township for a few years hauling children to the Harlan schools. The last school taught at No. 1 was the term ending in the spring of 1943. The enrollment for that term was four. Section 279.15, Code, 1946, provides that no contract shall be made with any teacher to teach an elementary school where the attendance in the preceding term was less than five, nor where it is apparent that at the next ensuing term the average daily attendance will be less than five or the enrollment less than six of school age. When the attendance reaches such minimum, the prohibition against employing a teacher automatically closes the school, and no action by the board is required.

At the annual meeting of the board of directors of the township school district on July 1, 1943, it was voted to close the school in Subdistrict No. 1. The minutes of the meeting do not show whether the closing of the school was to be temporary or permanent. But the secretary of the board and of the meeting testified that she heard the various members discuss the matter of closing the school in No. 1. She was asked, "And you understood that at that time the school was being permanently closed, is that right?" Her answer was, "Yes." The president of the board, who was a witness for each side, testified in both examinations that the permanent closing of the school was talked over at the board meeting and that the board perma-

nently closed the school at the meeting on July 1, 1943. There is no testimony to the contrary. Asked whether at the time the school was closed arrangements had been made for hauling children to other schools, Obrecht, the president of the board, testified:

"Why, yes, we had a bus going practically past the door for two or three years before that and was transporting these kids to school at the Harlan Independent District here, probably cheaper than we could run a school in those districts with a few children."

On September 24, 1945, a special meeting of the board was held. It was called for the purpose of discussing the purchase of a bus to transport the township school children to the public school at Harlan. The minutes of the meeting state:

"This meeting was called to discuss buying a new bus for Center Twp. alone. Mr. Brouhard [county superintendent] was present to help discuss this bus [matter]. After discussing the cost of a bus, the cost of keeping a bus, etc. it was decided to take a vote on 'whether Center Twp. should buy a bus.' The votes were six for—none against. The bus in discussion was an International to be bought at Hansen Garage at an estimated price of somewhere around $3000. President Ben Obrecht is to see about the bus."

Gale Grabill, the director for Subdistrict No. 1, as a witness for plaintiffs, testified concerning the board meeting of September 25, 1945:

"The school board determined to buy a school bus at that meeting and did buy it. I do not know whether they have got it yet or not. The school bus was paid for and purchased, but no delivery has yet been made. The people in the district knew that we had bought it. * * * I heard it discussed by members of the district."

Early in December 1945 Custer talked with Grabill and Obrecht, president of the board, about renting the schoolhouse. Obrecht told him he had no authority to rent or sell it but if he wished to buy it he would call a meeting of the board. The

meeting was called for December 17, 1945. Custer and wife attended the meeting. He testified, in substance:

"I don't know whether they knew that I wanted to buy it or not. I didn't myself. The matter came up at the meeting. I wanted a place for my boy to live, just out of the service. He wanted a farm, and I knew the building was setting there empty, and I offered to rent it. They said the school was closed and that they would sell it and wanted to know if I would buy it.".

After considerable discussion a price of $1,500 was agreed upon for the ground and the schoolhouse without the school equipment. Custer paid $100 on the contract and agreed to pay the balance when the deed was delivered. The board—five members being present—voted unanimously for the sale and directed the president and secretary to execute the deed. The other two board members were notified of the proceedings and later signed the minutes.

On January 7, 1946, the board met with six members present. The minutes of the meeting state:

"This meeting was called to have the board approve the deed that was drawn up by Mr. George Hurley, County Attorney, between the Center Twp. School Board and Mr. Glenn Custer whereby Mr. Custer purchased the schoolhouse and site known as Center No. 1 for $1500. *This deed was read aloud to all present by the secy. after it was passed so every member present could examine the same.* Motion was made * * * and seconded * * * that the board approve the deed. All in favor Yes, 6—No, none." (Italics supplied.)

The deed was signed by the president and secretary and delivered to Custer at this time on payment in full of the purchase price. At this meeting it was ordered that the school furnishings and playground equipment be sold at a reasonable price. A steel cabinet was sold to the secretary at the meeting.

The deed contained this clause:

"And, whereas, the real estate has heretofore been a school site and has been abandoned, the school permanently closed and has not been used for school purposes for more than two years last past and has reverted to the owner of the tract from which

the same was originally taken all as provided in Section 4379 of the 1939 Code of Iowa.''

Custer took possession of the property immediately after the meeting of December 17, 1945. He employed a building contractor to reconstruct the schoolhouse into a dwelling. Work was begun on December 20, 1945, and had progressed substantially in early January 1946. Some of the plaintiffs knew of the sale a few days after the December board meeting. They saw the remodeling as it was being done. Some of them consulted the county superintendent, the county attorney and other attorneys, but no complaint or objection was made to Custer. No appeal was taken to the county superintendent. On February 15, 1946, plaintiffs caused a notice to be served upon the board of directors and the county superintendent, alleging the invalidity of the deed because in excess of the statutory powers of the board, and demanding that the board commence action forthwith to establish title to the property in the school district. The notice also stated that if it was not complied with the signers would commence such action.

Custer completed the remodeling of the schoolhouse about March 1, 1946, at a cost of $2,500. Part of this expense was in repairing the dilapidated condition of the schoolhouse. Custer, Grabill, and the contractor all testified to its disrepair, in language substantially as follows: It needed quite a lot of fixing up. The roof and floor were bad in spots. The basement needed a lot of repair. The windows were rotted quite generally. The south end was badly rotted. The joist in the top of the south end had to be replaced. Glass was broken in the doors and a few of the windows. Some studding was rotted in the gable. The furnace was in bad condition and had to be replaced. The porch was in bad shape. It was wooden and the flooring was rotten. The steps were wooden and partly rotten. Water had run into the basement. The building needed painting.

After the school was closed, in the spring of 1943, no care was given to the property. The playground equipment—a slide, swing, and teeter-totter—were rusted. Weeds, which were mowed not over once a year, grew about the premises.

I. It is apparent from the record that the members and electors of the Center Township School District, and its board

of directors, in the administration of its school system were following the public policy of the state and the general, later-day trend evidenced by legislation for the consolidation of township school districts and subdistricts into larger educational centers, and for the public transportation of pupils to and from school. Where this is not done many farmers, desirous of giving their children better educational facilities, personally transport them or arrange for their transportation to town or city schools. That the number of the little white or red country schools is gradually decreasing in Iowa is common knowledge, and appears from the record in Dvorak v. School District Twp., 237 Iowa 442, 22 N. W. 2d 238, where eight of the nine subdistrict schools in Dodge Township, Guthrie County, Iowa, within the period of a few years, were closed. The reason therefor was the advantage of better schools to which parents insisted on transporting their children and the lessened expense to the school district. Schools are for the instruction of those attending, but when there are but three or four or none to attend, or those in the locality go to school elsewhere, there is little to be said for maintaining vacant buildings, which rapidly deteriorate even when cared for. As said in Hopkins v. School District, 173 Iowa 43, 45, 46, 151 N. W. 443, such vacant schoolhouses, situated as they usually are, because of tramps and prowlers, become a menace to the neighborhood and a fire hazard. In Center Township the number of subdistrict schoolhouses in use had decreased approximately fifty per cent. The schoolhouse in No. 1, through no particular fault of the electors and the board, but apparently through indifference and lack of interest, had become badly run down, to such an extent that a large expense was necessary to place it in a usable condition. Under the circumstances and conditions, the electors in the township and the board, with reason, may have considered the expense an unwise and needless one. There is direct evidence that the board at its July 1943 meeting intended the closing of the school to be ·permanent. The conditions, past and prospective, reasonably justified its action. Its official acts thereafter confirmed this intention. A new school bus for the township for the transportation of school chil-

dren to the Harlan school was purchased at an expense of $3,000. Custer wished to rent the building but the board solicited him to buy it. Even the desks, and other school equipment, including the playground apparatus, instead of being stored for future use, were ordered sold. At the board meeting of January 7, 1946, the deed conveying the property to Custer, prepared by the county attorney, which recited the previous abandonment of the use of the building as a schoolhouse, was read aloud to the board, and each member present examined the deed. In approving it and directing its execution and delivery each member certainly acted advisedly. If the recitations in the deed were not true, it is fair to presume that the deed would not have been approved, or at least some protest would have been voiced, and there is no evidence thereof.

It is true that a lack of, or a greatly diminished attendance of, pupils is ordinarily a factor for consideration in the permanent closing of a school. But, as in this case, there are usually other reasons of controlling importance. The principal one is the desire of every parent to give his child or children better educational advantages and opportunities than are afforded by the one-room country schoolhouse with classes from the primary to the eighth grade.

Plaintiffs urge as a proposition for reversal and argue that the court erred in finding that the school was permanently closed by action of the board at its meeting in July 1943. It is our conclusion, as indicated above, that the record amply sustains such finding.

II. Plaintiffs also urge as a proposition for reversal and argue that the evidence established the school was only temporarily closed on account of small attendance, and that, because of section 297.21 of the 1946 Iowa Code, the right of reversion did not accrue to Custer, the purchaser. We do not agree with this contention of the plaintiffs with respect to either the fact conclusion or the legal conclusion. The rights of Custer and the authority of the board were not controlled by section 278.1(2) of the 1946 Code. In construing the predecessors of these sections in the Code of 1897, in Waddell v. Board of Directors, 190 Iowa 400, 410, 175 N. W. 65, 69, Evans, J., said:

"We think, therefore, that there is no contradiction between our construction of the statute [section 2816, Code, 1897, section 297.15, Code, 1946] and Section 2749 [section 278.1(2) Code, 1946]. Such section has its appropriate field of operation upon either construction of Section 2816."

Where section 297.15, Code, 1946, properly applies, section 278.1(2), Code, 1946, of course, has no application. Plaintiffs concede this but insist that Code section 297.21 renders section 297.15 inapplicable. We have already stated our disagreement with this contention. The latter section was no doubt enacted to prevent the owner of the including tract from enforcing reversion when the nonuse for two years was temporary only and for no other reason than insufficient attendance. We cannot believe that it was the intention of the legislature in passing section 297.21 to nullify section 297.15 and render it inoperative where conditions other than insufficient attendance were deemed sufficient by the board to no longer use the property for school purposes.

Section 274.8, Code, 1946, provides that a school township, at any regular meeting or special meeting called for that purpose, may divide the school township into subdistricts such as justice, equity, and the interests of the people require, and may make such alterations of the boundaries of subdistricts heretofore formed as may be deemed necessary.

Section 279.11, Code, 1946, provides the board shall determine the number of schools to be taught, divide the corporation into such wards or other divisions for school purposes as may be proper.

The exercise of these statutory rights might reduce the need of one school site and schoolhouse, or more, for school purposes. In our judgment, if the nonuse so brought about should continue for the time specified in section 297.15, the right of reversion, or statutory right to purchase, as this court has spoken of it (Waddell v. Board of Directors, supra, 190 Iowa 400, 408, 175 N. W. 65, 68) would accrue.

The board of directors had statutory authority to determine whether school should be taught at Subdistrict No. 1. And it follows that it might determine whether that school might be

discontinued temporarily or permanently. Anyone aggrieved by the action of the board at the closing of the school might have appealed to the county superintendent of schools and from an adverse ruling might have carried the appeal to the state superintendent of public schools, but plaintiffs took no such appeal.

We find no merit in either proposition.

III. Both Custer and the district and its officers, in their separate answers, pleaded that plaintiffs, by not appealing to the county superintendent of schools, were estopped to maintain this suit. They do not complain of any abuse of discretion on the part of the board, either in closing the school or executing the deed, but they challenged the power and authority of the board. We think that they had a right to have that matter determined by the court. See Security Nat. Bk. v. Bagley, 202 Iowa 701, 704, 705, 210 N. W. 947, 49 A. L. R. 705, and authorities cited; 47 Am. Jur., Schools, section 44; Beck v. Independent Consol. Sch. Dist., 213 Iowa 1282–1285, 241 N. W. 427; Clay v. Independent Sch. Dist., 187 Iowa 89, 98–100, 107, 174 N. W. 47; Munn v. Independent Sch. Dist., 188 Iowa 757, 763, 764, 176 N. W. 811.

The judgment and decree is—Affirmed.

OLIVER, C. J., and HALE, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.