SCHOOL DISTRICT OF SOLDIER TOWNSHIP (Crawford County), appellant, v. RAY A. MOELLER, county treasurer, et al., appellees.

No. 48780.

(Reported in 73 N.W.2d 43)

240

NOVEMBER 15, 1955.

L. W. Powers, of Denison, for appellant.

Charles R. S. Anderson, of Danbury, and Charles N. Woolery, of Sergeant Bluff, for appellees.

THOMPSON, J.—This is the second appearance of this controversy here. It was before us, upon different issues, in Independent School District of Danbury v. Christiansen, 242 Iowa 963, 49 N.W.2d 263. The questions involved in the first case were chiefly procedural, and in no manner decided the issues we now have before us.

The material facts here show that on July 5, 1949, there was filed with the county superintendent of schools of Crawford County a paper purporting to designate certain elementary pupils, residents of Subdistrict No. 3 of the plaintiff school district, to attend the Independent School District of Danbury for the school year of 1949-1950. This designation was approved by the Crawford County Board of Education on July 14, 1949, was filed with the state department of public instruction on July 18, 1949, and approved there on January 19, 1950. The designation was signed by the president and secretary of the plaintiff-board and was in the usual form, except that only one of four forms usually filed was signed, the others being copies. While the designation was signed by the officers of the district, the blanks showing the pupils, by section numbers, designated to the Dan-

bury district (which will be hereinafter referred to as the defendant) were in the handwriting of some other and unnamed person.

The school in Subdistrict No. 3 had been closed during the school years 1947-48 and 1948-49. The testimony is that this closing was because of inability to secure a teacher; but there is no showing in the minutes of the board as to the reason or, as we understand the record, that the school was actually closed. That it was closed, however, is undisputed. Some time after the designation of certain pupils to the defendant district was signed and filed, probably during the month of August 1949, a teacher was secured for Subdistrict No. 3, and upon application the county superintendent gave the board permission to open the school. This was done, and it is now contended first, that no designation to the defendant district was actually made; and second, if it was so made it was canceled by the opening of the school with the permission of the county superintendent. From this the plaintiff argues that no sums are due the defendant for tuition or transportation. It is not disputed that the designated pupils actually attended the Danbury school, or that the charge sought to be collected is proper if the plaintiff is liable therefor in any amount. The payment of this sum, in the amount of $1003.40, was approved and ordered by the Crawford County Board of Education, and the present action was brought to enjoin the county treasurer from paying it over to the defendant. The trial court held with the defendant, and dissolved a temporary injunction previously issued restraining such payment.

I. We think the determining question in the case centers around the matter of the designation of elementary pupils resident in Subdistrict No. 3 to the defendant school. The president and secretary of the plaintiff-board admit the signatures on the designation filed with the county superintendent of schools on July 5, 1949, are genuine; but they deny they ever knowingly signed them, and there is no record of the plaintiff-board showing any authority therefor. The testimony of the above referred to president of the board, Martin Flanigan, and its secretary, Gustav Seils, is that at a meeting of the board on July 1, 1949, the matter of designations was discussed, and certain designa-

tions of high school pupils were made, but the board did not authorize any designation of elementary pupils to the defendant. How they happened to sign such a designation they do not explain; they say they did not know they had done so. The first question we must determine is the factual one of whether the designation was ever actually made by the plaintiff-board.

 It is elementary that the officers of a school board have only such authority as the board may give them; they can take no action in the name of the board unless it has, in a legal meeting, empowered them so to do. Beers v. Lasher, 209 Iowa 1158, 229 N.W. 821; Herrington v. District Township of Liston, 47 Iowa 11. But it is also long settled in Iowa that a statute directing an official record of board proceedings is directory only. Higgins v. Reed, 8 (Clarke) Iowa 298, 74 Am. Dec. 305. The actions of the board may be shown by evidence outside the official minutes. Maxwell v. Custer, 238 Iowa 1306, 1309, 30 N.W.2d 177, 179; 20 Am. Jur., Evidence, section 1170, page 1022; Smith v. Johnson, 105 Neb. 61, 178 N.W. 835, 836, 12 A. L. R. 231. We went into the question of admissibility of oral evidence to show the action taken by an administrative board at some length in Morrow v. Harrison County, 245 Iowa 725, 739, 740, 64 N.W.2d 52, 61. The body there concerned was the county board of supervisors, but the reasoning would certainly apply to a school board also. Many authorities are cited in the opinion (Garfield, J.), and the conclusion is reached that oral evidence is clearly admissible. ("We have repeatedly held that where there is no record of action taken at a board meeting oral evidence thereof is competent.")

The evidence for the plaintiff tending to deny the execution of the designation by any official act of the board is found in the absence of any official record authorizing it; in the testimony of the president and secretary that no official action was taken; that they did not knowingly sign it; and in plaintiff's Exhibit L, consisting of five sheets of unruled paper, undated except for the year 1949, which purports to contain designations of high school and elementary pupils for the following school year. There is no designation of the defendant school for elementary pupils thereon. The board secretary, Gustav Seils, testified it is a rec-

ord of the designations made by the plaintiff-board at its July meeting, written by him. Why he did not make this record in the official minutes instead of upon scratch paper he does not explain.

For the defendant also, certain facts must be considered in determining where the weight of the evidence lies. There is first, the fact that the designation was in fact signed by the proper officers of the plaintiff-board and was filed with the county superintendent; the school in Subdistrict No. 3 had been closed for the two preceding years and no teacher had been found, if one was in fact sought, at the time the designations were signed and filed; the applicable law which went into effect on July 4, 1949— section 3 of chapter 116 of the laws of the Fifty-third General Assembly, now section 285.4 of the Codes of Iowa 1950 and 1954—required that all designations should be submitted to the county board of education on or before July 15 for review and approval, and the action of the officers of the plaintiff was in line with this statute; the officers say they were intending to sign only designations of high school pupils to the defendant, but the record shows they signed and filed a separate designation of high school pupils to Danbury at the same time they filed the designation of elementary pupils; the president testified: "Q. Is it not true that the board then does give, or in the past has always given quite a little leeway to the secretary and the president as to making these designations? A. That is the way the superintendent wants it."; no petition asking a change of designations was filed with the county board of education on or before July 15, as the law provides, or at any time; the president of the plaintiff-board further testified: "The designations were not signed by Mr. Seils (the secretary) at the time he brought them over to me. We signed them in the presence of each other. We seen that we knew what they were and what we were doing."

■ II. Of course, if the designation was in fact signed without authority of the board, it was void. But there is a firmly established rule of law that presumes the acts of a public officer are regular and done with full authority. The rule is thus stated in 31 C. J. S., Evidence, section 146, pages 798, 799: "* * * it is presumed that a public official discharges his duty or performs an act required by law in accordance with the law and the

authority conferred upon him * * *." We have many times announced and followed the substance of this language. Swan Lake Consolidated School District v. Consolidated School District, 244 Iowa 1269, 1279, 1280, 58 N.W.2d 349, 354, 355; Gunson v. Williams, 242 Iowa 916, 919, 48 N.W.2d 809, 810; Butler v. City of Des Moines, 219 Iowa 956, 957, 258 N.W. 755 ("The law presumes that every public officer does his duty."); Smith v. The District Township of Knox, 42 Iowa 522, 525.

Going one step further, it also is an established rule that a pre-existing condition or preceding act necessary to make the act in question legal will also be presumed. The rule is thus stated in Putnam v. Bussing, 221 Iowa 871, 876, 877, 266 N.W. 559, 562: "Therefore, the official act of the deputy county treasurer, in executing the certificate in question in the absence of evidence to the contrary, will be presumed to be regular; that is, that he acted within the scope of his authority and that the pre-existing condition necessary to render his act legal was present."

See also 31 C. J. S., Evidence, section 146, supra, pages 802, 803. The application of this principle to the instant case means that the acts of the officers of the plaintiff-board are presumed to be regular and with authority, and based upon a preceding act: i.e., the proper legal action of the board authorizing the execution of the designation.

It is of course true that these presumptions, or inferences of fact, are rebuttable. The problem before us here is to determine where the weight of the evidence lies. We have on one hand the signed designation; on the other the denial of the executing officers that they knowingly signed it, the absence of any record of the board authorizing such action and the memorandum, Exhibit L, supporting the testimony of the board secretary negating authority to act as the officers did.

There are of course other matters involved in a factual determination. As the able trial court pointed out, if the plaintiff-board had on July 1 refused or omitted to designate the defendant as the school to which elementary pupils should be sent, the act of the officers in signing and filing such a designation with the superintendent of schools four days later, on July 5, showed either an unbelievably short memory or outright fraud. The

court referred to Exhibit L thus: "In appearance, form, and content it is not convincing." We are given no explanation why the two officers of the board, both well able to read and write, should sign this designation without knowing they did so. The president testified they signed them at the same time; they knew what they were and what they were doing. No fair inference arises that the designation was changed or that anyone intentionally misled or deceived the officers. The statement they thought they were signing a designation of high school pupils is contradicted by the fact they did in fact file at the same time a separate designation of high school pupils to the Danbury school.

There is also to be considered the fact that the school in Subdistrict No. 3 had been closed for two years, and no teacher was in prospect when the July meeting of the board was held. The time of making and filing the designations had just been fixed by a new statute, section 3 of chapter 116, Acts of the Fifty-third General Assembly, supra. While this statute was not in effect on July 1, 1949, it became effective on July 4, and so was the governing law when the designation was filed with the county board of education on July 5. The acts of the officers of plaintiff all seem to have been done in conformity to the new statute. Since the credibility of the witnesses Flanigan and Seils is much involved here, we give weight to the findings of fact of the trial court. It is our conclusion that the weight of the evidence shows the designation of elementary pupils to the defendant was done with the authority of the board. We find the evidence which attempts to rebut the presumption of regularity and authority, strengthened as such presumption is by other facts and inferences in the record, lacks persuasiveness sufficient to overcome it.

III. The finding of regularity and authority in designating elementary pupils to the defendant is decisive of the case. We set out herewith the material parts of section 3, chapter 116, of the Acts of the Fifty-third General Assembly, now section 285.4 of the Codes of 1950 and 1954, supra:

"When a board closes its elementary school facilities for lack of pupils or by action of the board, it shall, if there is a school bus service available in the area, designate for attendance

the school operating the busses, provided the board of such school is willing to receive them and the facilities and curricular offerings are adequate. The board of the district where the pupils reside may with the approval of the county board of education, subject to legal limitations and established uniform standards, designate another rural school and provide their own transportation if the transportation costs will be less than to use the established bus service.

"All designations must be submitted to the county board of education on or before July 15, for review and approval. The county board of education shall after due investigation alter or change designations to make them conform to legal requirements and established uniform standards for making designations and for locating and establishing bus routes. After designations are made, they will remain the same from year to year except that on or before July 15, of each year, the rural board or parents may petition the county board for a change of designation to another school. Appeals from the decision of the county board on designations may be made by either the parents or board to the state superintendent of public instruction as provided in section 285.12 and section 285.13."

It will be noted that the action to be taken by the board in regard to designating elementary pupils to other schools is predicated upon a closing of the school "for lack of pupils or by action of the board." It is urged by the plaintiff that there is no showing the school was closed for lack of pupils. Passing the clear showing in the record that there were only four pupils resident in the subdistrict who would attend the school, it seems undisputed that the school was closed "by action of the board." It may be there is no record evidence of any action of the board closing the school. But it does appear without contradiction that the school had been closed for two years past, and no teacher had been secured for the coming school term. The rule which we have previously stated, that the actions of a board are not void because no record is made in the official minutes but may be shown by outside evidence, is a salutary one. The officers and directors of small districts such as the one involved here are citizens who serve without compensation, whose other affairs occupy most of

their time, and who are generally not trained in keeping exact records of their actions in managing the affairs of their schools. It would be an unduly harsh rule, leading to endless litigation and unjust results, to hold that no action may be upheld unless it is meticulously recorded in the official minute book. It would be highly unrealistic to hold here that the school was closed for two years without some action of the board. We cannot presume the board suffered the closing of the school for that length of time through the law of inertia; that it did not in some way take proper action, unrecorded though it may have been, approving such closing. The same presumption discussed in Division I obtains here. If it did not direct the closing, the conclusion is inescapable that it ratified it. 78 C. J. S., Schools and School Districts, section 122, page 910.

This being true, we must assume the school was closed by action of the board. It had not been opened when section 285.4, supra, became effective on July 4, 1949. No teacher had been secured, and none was in fact obtained until about two weeks before the opening of the school in late August or early September. As this section requires, the designation was made before July 15, 1949, to the county board of education. Under the law then, and now, effective, the designation made remained in full force and effect, unless on or before July 15 the board, or parents concerned, made application to the county board for a change of designation. No one contends that such an application, a "petition" in the words of the statute, was made.

 We think the language of the statute, that "after designations are made, they will remain the same from year to year", applies to the situation where the board, after making the designation, later determines to reopen its school. When a pupil is designated by a board to a certain school, he then becomes a pupil of that school; and under the statute he remains such until the designation is changed, in the manner and time prescribed. The change can be made only by the county board of education upon petition of the designating board or parents of the pupil. A "change of designation" means not only a change to a third school but also back to the original designating school.

The evident intent of the legislature was to introduce a

previously lacking element of certainty into this feature of our school laws. It is of importance to the children affected, and their parents, that they have some previous definite knowledge of what school they will be expected to attend in the next school year; and it is likewise material to the designated school. It may well be that it will be necessary for it to hire additional teachers, or enlarge its transportation facilities, or arrange for more school books, or make other arrangements which require advance planning. Since schools in Iowa generally open late in August or early in September, the legislature evidently deemed it not unfair to the designating school to require it to decide by July 15 of each year whether it would designate pupils and to what school. If it has designated pupils to X school and wishes to change the designation to Y school, or if it has so designated to X school and then decides to open its own school, the procedure under the statute is the same. It may petition the county board of education for a change of designation. We think, as did the legislature, the six or seven weeks intervening between July 15 and the usual time of opening of the schools for the autumn term is none too much to enable all parties concerned to make necessary arrangements upon an assured basis.

IV. Our holding that the weight of the evidence shows the designation of elementary pupils to the defendant was actually made, and no timely change was asked or granted, disposes of the case. There is much contention concerning the question whether the reopening of the school was a legal one; but we do not find it necessary to decide it. It does appear that the attempt by some of the residents of the district and the officers of the board to add territory to Subdistrict No. 3 in an entirely illegal manner so that affidavits might be—and were—filed with the county superintendent showing six resident pupils who would attend the school was not in good faith. Two of the six resided in territory outside the district, and the procedure by which it was said to have been annexed to the district was in no way in accord with the statutory method provided for such annexation. It is difficult to understand that even a layman could have thought it legal or proper. The point is not material except as it throws light upon the bona fides or lack thereof of the officers

of the board and detracts from the weight of their testimony given upon the important question of the actuality and legality of the designation. The procedure strongly resembles a fraudulent misrepresentation upon which the county superintendent was expected to rely.

V. The plaintiff places some stress upon what it calls an administrative determination by the state department of education. This is found in a letter from the office of the department, dated April 4, 1950, which so far as material we quote: "If a rural school opens between the time the designations are made and the school term opens in September the designations would be canceled, provided the board notified the parents that the designation was void, inasmuch as the home school would be open." Administrative interpretations, while not binding upon the courts, are often entitled to and are given much weight, particularly when they have been in force for a considerable time. State ex rel. McElhinney v. All-Iowa Agricultural Assn., 242 Iowa 860, 868, 48 N.W.2d 281, 285. How long this interpretation had been in effect we are not told. It will be noted that it is conditioned upon the notification of the parents by the board; and there is no evidence any such notice was given. But we think in any event the interpretation made was in direct conflict with section 285.4, supra, and of course the statute when clear in its meaning must prevail. The direct meaning of this section which became effective on July 4, 1949, is that the designations will remain in effect from year to year unless changed; and when once made they will remain in force unless a petition to change them is filed with the county board on or before July 15. There is no room here for administrative interpretation.

We agree with the findings and conclusions of the trial court.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.