CENTER TOWNSHIP SCHOOL DISTRICT by Frank Rollins, president, appellee, v. OAKLAND INDEPENDENT SCHOOL DISTRICT by Victor Allen, president, et al., appellants.

No. 50451.

JANUARY 9, 1962.

Hogzett & Burgett, of Oakland, for Oakland Independent School District of Oakland, and Ross F. Caniglia, of Council Bluffs, for Board of Education of Pottawattamie County, appellants.

Richard C. Turner, of Council Bluffs, for appellee.

SNELL, J.—This is an action to determine the method of computing school tuition costs charged by a receiving district against the sending district. The problem is one of statutory construction and involves the propriety of including among the expenditures of the receiving district an item of principal on bonded indebtedness paid from the schoolhouse fund. The case, under the same name but involving questions of procedure, has been before us previously. See Center Township School District v. Oakland Independent School District, 251 Iowa 1113, 104 N.W.2d 454.

Because of the trend toward school reorganizations, this problem of school tuition will become of diminishing statewide importance. Because of the complexities of the problem, this is fortunate.

Center Township School District, plaintiff herein, is a rural school township in Pottawattamie County east of and contiguous to the Independent School District of Oakland, Iowa.

Oakland Independent School District, principal defendant herein, is an independent school district functioning under the laws of Iowa and operating an elementary and high school.

Approximately 100 elementary and high school students residing in Center Township, plaintiff-district, attended school at Oakland Independent School District during the school year 1958 and 1959. The schedule of school costs was prepared by defendant district for the purpose of fixing tuition rates for the school year 1959–1960. These costs and the computation of tuition charges based thereon were approved by the County Board of Education named, one of the defendants herein.

Plaintiff claims that the rates were fixed in an excessive

amount because of defendants' failure to properly construe and apply the provisions of sections 279.18 and 282.20 of the Code. Plaintiff seeks a declaratory judgment construing these statutes.

The Department of Public Instruction of the State of Iowa was granted leave to appear and has filed brief amicus curiae.

Included in the expenditures by defendant district in computing the cost upon which tuition charges were based was an item of $5000 paid from the schoolhouse fund for retirement of bonded indebtedness. Plaintiff objects to this item of principal payment. There is no objection to the inclusion of interest paid on bonded indebtedness.

It is defendants' position that the sum of $5000 paid on the principal indebtedness is properly includable in determining tuition rates and is in accord with sections 279.18 and 282.20 of the Code.

The appraised value of the buildings of defendant district used for depreciation purposes was the sum of $401,776.46 with outstanding bonded indebtedness of $100,000. The bonded indebtedness had been reduced to this amount by reductions in prior years including the $5000 paid in 1958 and 1959.

The item of principal payments for reduction of bonded indebtedness has been included in each schedule of tuition costs since the bonded indebtedness was incurred in 1954.

The methods employed by defendant district in the computation of costs are consistent with the methods employed by other high school districts in the state and are in accord with methods approved by the State Department of Public Instruction and the State Superintendent of Public Instruction of the State of Iowa.

It is the contention of plaintiff that the payment of principal on bonds from the schoolhouse fund is not properly includable in the computation of tuition costs under the statute.

Section 279.18 of the Code sets forth the method to be followed in computing tuition costs for elementary students. Section 282.20 of the Code sets forth the method of computing tuition costs for high school students. The controversial provisions are identical and need not be separately set forth.

Section 282.20 provides as follows:

"282.20 Tuition fees—payment. The school corporation in which such student resides shall pay from the general fund to the secretary of the corporation in which he shall be permitted to enter a tuition fee sufficient to cover the average cost per high school child (including both resident and tuition students) in average daily attendance in the tuition-receiving district in the preceding year. Such tuition rates shall include expenditures from the general fund for general control, instruction, auxiliary agencies except transportation costs, co-ordinate activities, operation of plant, maintenance of plant, fixed charges including insurance on buildings and contents, capital, interest paid for debt service from the general fund, *interest paid for debt service and retirement of bonds from the schoolhouse fund.* A pro rata charge for depreciation on buildings shall be made at the rate of two per cent per annum on the appraised value, less bonded indebtedness thereon, of all buildings owned by the school corporation and used for high school purposes, but not exceeding the maximum tuition rate as determined by the state superintendent of public instruction as prescribed in section 282.24. No depreciation charge shall be made for the portion of the initial cost of buildings and equipment purchased with federal grants. * * *." (Emphasis supplied.)

The controversial issue is the interpretation of the words italicized above.

The able trial court, in a careful analysis of the problem and from which we will quote, held for plaintiff.

The foundation facts were established by stipulation of the parties. In addition thereto, the president of plaintiff-district testified as to payments and protests as to the method of computation.

The testimony of defendants consisted of testimony by Dr. Paul C. Rodgers, Jr., a professor of English with bachelor, master, and doctorate degrees in his field. The doctor analyzed the sentence in controversy, its grammatical structure and weakness, and gave his opinion that the item of interest and the item of principal were to be construed as independent elements, but he also said, "* * * that this sentence cannot be construed by applying to it only the normal concepts of sen-

tence structure, the normal meanings of words which we normally use. You are going to have to give your author some help in order to read this sentence at all. I can point out other aspects of the sentence which indicate it is not competently written."

Mr. Paul F. Johnston, Assistant State Superintendent of Public Instruction and a member of the State Department of Public Instruction for over 15 years, testified as to the recommendations of the department relative to the inclusion of principal payments in the computation of tuition costs. He testified that he worked with the legislature that enacted the statutory provisions involved and at that time made available to the legislative committees the information upon which the present administrative procedures are based. These administrative procedures are now set forth in a book entitled "Uniform Financial Accounting for Iowa School Districts" issued by the Department of Public Instruction. On page 49 of this publication there appears an instruction for the computation of tuition cost per pupil, including "amount of payments for principal and interest on bonds and 2% depreciation of the appraised value of buildings."

I. From the trial court's opinion we quote:

"In imposing liability under the statute in question the legislature's policy there declared is that the sending district shall pay the *average cost * * * pupil*. Furthermore the 'average cost' must also be computed to include 'both resident and tuition students'. In other words the statute contemplates no inequality based on residence between these classes. Whatever factors are taken into consideration, the 'cost' must fall equally and proportionally on all. In construing and applying the statute these declared policies must control.

"Whatever disagreement in details may exist among experts as to factors to be considered in determining 'costs', in any business operation it is quite generally supposed that either depreciation or installment payments on debt incurred to create or improve the physical plant is a proper factor to be included, but not both. These factors are always regarded as alternative. Obviously the legislature can adopt any method it

chooses in prescribing accounting factors to be considered in determining costs, but where terms are used expressing concepts which are peculiar to a special discipline it is proper to say that the meaning attributed to such words or terms is that which is generally understood in that field. This is the same as saying that the words are to be used in their ordinary sense as commonly understood."

Extensive and technical analysis and discussion of the sentence involved leads to no satisfactory conclusion. In the previous appeal of this case, supra, at page 1116 of 251 Iowa, we said: "The statute does not seem as clear as it might be upon this point and it is not surprising the present controversy has arisen."

Doctor Rodgers, the eminent grammarian, testifying for the defendants, concluded his testimony by saying, "You are going to have to give your author some help in order to read this sentence at all", and that the sentence cannot be construed by normal concepts of sentence structure.

The trial court in his decree commented: "Whatever philosophical questions or doubts may underlie use or disregard of rules of syntax in construing statutes it is fairly apparent that the complete opacity of the sentence in question utterly defies any construction or interpretation based on intrinsic considerations."

The only thing clear is that the part of the sentence under attack is not clear.

II. In a situation such as we have here, we must look for the legislative intent and resort to extrinsic reasoning in stating what we find to be the legislative intent.

In the difficult field of statutory interpretation, extrinsic aids of varied and diminishing impact on the ultimate decision may be sought.

At the center within the perimeter of possible aid are the words themselves, the canons of construction and the object and purpose of the statute. In the statute under consideration here the words cannot be construed (without help) by the "normal concepts of sentence structure." We think, however, that the

purpose of the statute is to equalize and make fair the distribution of school costs.

Resort to the title, preamble, the chapter and section headings and the context gives us little help here. The present statute was enacted as an amendment to tuition statutes that throughout the years have been changed many times.

The history of the tuition laws indicates a desire that tuition charges should follow but never exceed rising costs. Rigid and conservative maximums have always been provided for the protection of the sending district. We do not have the benefit of the legislative debates. All we have is the testimony of the Assistant Superintendent of Public Instruction that the information now contained in the department's accounting bulletin was made available to the legislature. Whether or not the draftsmen of the statute had the department's ideas in mind and whether the department's ideas were accepted or rejected, we do not know. Neither can we determine this from reading the statute.

Around the outer area of help in statutory interpretation reference may be had to related and adopted statutes and administrative construction. The related statutes here give us no help. We will refer later to administrative construction.

██ ██ From "Principles and Techniques of Statutory Interpretation" by Shelden D. Elliott, director, The Institute of Judicial Administration, we quote: "The primary purpose of statutory construction is to ascertain the intention of the legislature, not only from the language used but also from the reason and necessity for the Act, the evil sought to be remedied and the objects and purposes sought to be obtained by it. Schneller v. Schneller, 356 Ill. 89, 190 N.E. 121, 92 A. L. R. 838, Jones v. Pebler, 371 Ill. 309, 20 N.E.2d 592, 125 A. L. R. 451, and People v. Maggi, 378 Ill. 595, 39 N.E.2d 317. The words of a statute will be interpreted according to their common and popular acceptation and import unless that interpretation will defeat the manifest intent of the legislature. Barnes v. City of Chicago, 323 Ill. 203, 153 N.E. 821, 52 A. L. R. 560. A situation which is within the object, spirit and meaning of a statute is regarded as within the statute although not within

the letter. Burke v. Industrial Comm., 368 Ill. 554, 15 N.E.2d 305, 119 A. L. R. 1152."

Professor Karl Llewellyn, University of Chicago School of Law, in his recent book "The Common Law Tradition", on page 402 says: "It is my position that in the Grand Style of Reason which dominated our appellate deciding a century back and which we have for twenty and more years been ever closer to recapturing, the juice lies first of all in the application of reason and sense to spotting the significant type-situation and diagnosing the sound and fair answer to the type-problem."

 III. It is the purpose of the statutes, as clearly indicated by our school laws, to equalize the cost of education. As between a receiving district and a sending district the purpose of the tuition statute is to require the sending district to pay its fair share of the school costs but no more than its fair share. There being no dispute as to interest or the items paid from the general fund, no discussion relative thereto is necessary.

IV. The statute provides for an appraisal of the buildings of the receiving district but in computing the depreciation there is a specific exclusion from the appraised value of the amount of the bonded indebtedness thereon and there is also a specific exclusion of that portion of the initial cost of the buildings and equipment purchased with Federal grants. This clearly indicates that the depreciation chargeable to the sending district shall be computed only upon the actual paid-for investment of the receiving district. If only one year is taken as an isolated example, it might be fair to charge as part of the school cost the amount of principal indebtedness retired during the current year. If this practice is extended throughout the maturity life of the bonded indebtedness, the sending district would each year pay its share of the principal retirement expense. Coincident therewith the charge for depreciation would increase due to the increased equity of the receiving district in the school buildings. The net result would be that the sending district, over a period of years, would not only help retire the indebtedness but would also pay to the receiving district a depreciation charge based in part on the sending district's investment in buildings. The

sending district would thus be paying depreciation on what it had already paid for. We cannot conceive that the statute was intended to authorize a double charge.

V. It is argued that the words "interest paid for debt service and retirement of bonds from the schoolhouse fund" can only mean interest paid on outstanding bonds plus amounts paid for retirement of bonds. We do not agree.

The words "debt service" are frequently used in an all-inclusive way. In the state research bulletin on which defendants rely (page 48), under the heading "Debt Service", the following items are listed:

Principal on bonds

Interest on bonds and warrants

Other debt service.

Debt service might include various items such as refunding expense or prepayment of interest on bonds called before maturity. As we construe the statute, only the interest paid incident to the various items of debt service is includable in computing tuition costs.

VI. It is argued by defendants that we should follow the administrative interpretation given the disputed Code section by the State Department of Public Instruction.

State ex rel. McElhinney v. All-Iowa Agricultural Assn., 242 Iowa 860, 868, 48 N.W.2d 281, 285, says: "A well recognized rule is that, while not controlling, courts give much weight to the construction of statutes by administrative officials charged with their operation and enforcement. Especially where such construction is of long standing it will not be lightly discarded by the courts [citations]."

See also School District of Soldier Twp., Crawford County, v. Moeller, 247 Iowa 239, 250, 73 N.W.2d 43.

That part of the statute involved herein was enacted in 1953 by the Fifty-fifth General Assembly.

The research bulletin of the Department of Public Instruction is dated April 1954. The inclusion of principal payment of bonds in computing tuition costs has been standard practice since 1954. Plaintiff-district has protested the inclusion of the disputed items since early in 1958. This action was

started in April 1960. Defendants' computation of tuition costs is based on 1958–1959 expenditures. Where it is said that an administrative construction of a statute is entitled to great weight, it also appears that the construction has been of long standing. In the case before us the elapsed time is not such that we can call the construction "of long standing."

The administrative ruling is entitled to weight as an opinion of sincere officers charged with a difficult task but not because it is venerable with age.

VII. To construe the statute as urged by defendants would require us to add punctuation or words that are not there.

The right to include principal payments in computing tuition costs is not clear under the statute. It may be a case of casus omissus but we have no right to supply the defect. The right to legislate is in the legislature and not in us. Kane v. City of Marion, 251 Iowa 1157, 104 N.W.2d 626. Neither reason, logic nor the equities in the case at bar lead us to the conclusion urged by defendants.

The method of computing tuition costs is statutory. In computing tuition costs, amounts paid from the schoolhouse fund on principal of bonded indebtedness are not specifically included under the statute. To include both depreciation allowances as authorized by statute and principal payments as claimed by defendants would be contrary to reason and sound accounting practices and beyond the purpose and intent of the statute.

The trial court concluded with these words: "* * * *section 279.18* and *section 282.20* are construed to mean that factors to be included in determining costs for the purposes of fixing tuition rates between the plaintiff and defendant shall include depreciation, to be determined by the statutory formula but shall not include any amount paid by the defendant to retire or discharge any part of the principal amount of any debt payable or paid from the schoolhouse fund. * * *."

We agree and adopt these words.

The decision of the trial court is affirmed.—Affirmed.

GARFIELD, C. J., and OLIVER, HAYS, THOMPSON, LARSON and THORNTON, JJ., concur.

PETERSON, J., takes no part.

BLISS, J., not sitting.