# IN THE COURT OF APPEALS OF IOWA

No. 20-0060
Filed August 19, 2020

**BRADLEY E. WENDT,**
     Plaintiff-Appellant,

**vs.**

**MAHANAIM N. PETERSON,**
     Defendant-Appellee.

_____

     Appeal from the Iowa District Court for Crawford County, Duane E. Hoffmeyer, Judge.

     Bradley Wendt appeals an order establishing custody, physical care, visitation, and support for his minor child. **AFFIRMED AND REMANDED.**

     Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

     Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for appellee.

     Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

B.W. is the child of Bradley Wendt and Mahanaim Peterson. In this custody case, Wendt contends the district court erred in (1) awarding physical care of B.W. to Peterson; (2) determining child support; (3) crafting the visitation schedule; and (4) ordering Wendt to pay Peterson's attorney fees. Peterson defends the district court's rulings and requests appellate attorney fees. We affirm but remand for an award of appellate attorney fees to Peterson.

### I. Factual Background

This case was tried in September 2019, when B.W. was five years old. B.W. has an older half-sibling, N.H., who was twelve at the time of trial. N.H. is Peterson's child from a prior relationship. N.H. lives with Peterson. B.W. and N.H. are closely bonded.

Peterson, Wendt, and N.H. lived together from 2009 to 2018. After B.W. was born in February 2014, B.W. lived with Peterson, Wendt, and N.H. until February 2018 when Wendt and Peterson parted ways.

Peterson was thirty-two at the time of trial. She has a dental assisting diploma. She works full time at the Hy-Vee pharmacy.

Wendt was forty-two at the time of trial. He has a degree in criminal justice. He is employed full time as a police officer for the City of Lake View. At the time of trial, he was also working part time for the City of Adair, although he planned on ending that employment in the near future. He is also president and sole shareholder of BW Outfitters. Its business involves the sale of firearms and related matters. It has stores in Anita and Denison.

In September 2018, Wendt commenced this custody action. Following a September 2019 trial, the district court entered an order (1) granting Peterson physical care, (2) granting visitation rights to Wendt, (3) setting Wendt's child support obligation, and (4) ordering Wendt to pay some of Peterson's attorney fees. Wendt filed a motion to amend and enlarge. The court granted the motion in part by modifying the visitation schedule. Otherwise, the court denied the motion. Wendt appeals.

## II. Standard of Review

Custody cases are equitable matters. So we review each issue de novo. Iowa R. App. P. 6.907. But we give weight to the fact findings of the trial court, who is "greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). As Judge Doyle has properly observed:

> [W]e give careful consideration to the findings of the trial court . . . because the district court, unlike this court on appeal, has the opportunity "to view, firsthand, the demeanor of the witnesses when testifying." A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this "nonverbal leakage." Thus, the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias and prejudice.

*In re Marriage of Rademacher*, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011) (citations omitted). We will affirm unless the district court "failed to do substantial equity." *Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

**A. Physical care**

The real focus of this case is physical care. Wendt bemoans the district court's refusal to award joint physical care. Peterson defends the district court's award of physical care to Peterson.

Under Iowa Code section 598.1(4) (2018), joint physical care means "both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent."[1] "Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). "Given the fact that neither parent has rights superior to the other with respect to the child's routine care, joint physical care also envisions shared decision making on all routine matters." *Id.*

A court should order joint physical care only if it will serve the child's best interest. *See* Iowa Code § 598.41(5)(a). "A multitude of factors go into a determination of whether joint physical care is warranted." *In re Marriage of Geary*, No. 10-1964, 2011 WL 2112479, at *2 (Iowa Ct. App. May 25, 2011); *see* Iowa Code § 598.41(3). "Where both parents are suitable caregivers," though, the propriety of joint physical care will usually turn on "four key considerations: (1) stability and continuity of caregiving; (2) the ability of [the parents] to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4)

---

[1] Because Wendt and Peterson never married, Iowa Code chapter 600B governs this proceeding. However, the provisions of chapter 598 relating to determinations of custody, physical care, and visitation apply to chapter 600B actions. *See, e.g.*, Iowa Code § 600B.40(2), (3).

the degree to which parents are in general agreement about their approach to daily matters." *Geary*, 2011 WL 2112479, at *2 (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007)).

We think these factors weigh against joint physical care. As the district court found, Peterson "was the primary provider up until the parties' separation, taking care of medical appointments, shopping, food preparation, childcare[,] and similar tasks." While the parties experimented with joint physical care following their separation, it did not go especially well. Wendt "did not know who some of [B.W.'s] providers even were," the court noted. Plus the parties have struggled with communication and co-parenting. Their disputes are "grow[ing] in frequency," the court noted. Indeed, as Wendt acknowledges, the parties simply have "different outlook[s] on life in general," including "different ideas of how parenting . . . should work." They could not agree on issues like B.W.'s bedtime, whether B.W. should play on trampolines or participate in cliff jumping, and whether B.W. should be in daycare.

Like the district court, we do not think joint physical care is B.W.'s best option. So we decline to order it.

**B. Child support**

Wendt next argues that, even if we decline to modify the physical care arrangement, we should reduce his child support obligation. Wendt's argument focuses on his income. Wendt contends the court should have only considered his employment income of $58,546. Wendt argues the court should not have credited him with $20,000 estimated income from BW Outfitters.

We disagree. BW Outfitter's gross sales exceed $4,000,000 per year. Wendt is the president and sole shareholder. And the district court found "the evidence overwhelming that" Wendt "is receiving income from his business to purchase/subsidize real estate investments, home improvements, purchase of other equipment, et cetera." It is true this income has not always been clearly documented. Moreover, as the district court expressly found, Wendt was "less than forthright" when answering questions "regarding his earnings and ability to accumulate assets on a relatively modest salary that would not appear to justify these expenditures." So, like the district court, we find it "difficult" to say exactly how much income Wendt receives from his business. It is not disputed, however, that the business paid Wendt $60,000 in 2016. Based on the totality of the record, including the district court's express findings, we decline to disturb the court's conclusion that $20,000 in business income "should be included" in Wendt's personal income "for child support calculation purposes."

**C. Visitation**

Wendt raises two complaints about the visitation schedule. First, he complains that his alternating weekend visitation should begin as soon as school lets out on Friday, not 6:00 p.m. as the district court ordered. He contends it is not in B.W.'s best interest to "be forced [to] return" to Peterson's care "for a few hours" on Friday "when [B.W.] could immediately be retrieved by" Wendt, who lives only a few miles from her school. Peterson responds that, because B.W. will be living with Peterson, it is in B.W.'s best interest "to retrieve her belongings from home for her weekend visit." Also, "returning home after school will fit into her regular routine."

From what we can tell, neither arrangement would be clearly inconsistent with B.W.'s best interest.  Each has its pros and cons.  So we decline to disturb the district court's determination.

Second, Wendt argues that exchanges during the summer "week-on, week-off" schedule should occur on Monday mornings, not Friday at 6:00 p.m. as the district court ordered.  This would continue the arrangement the parties followed during the pendency of this case.  But Peterson believes summer transitions should occur on Friday evening at 6:00 p.m.—just as they occur during the school year—"in order to retain a consistent schedule year-round."

Again, neither option seems plainly contrary to B.W.'s best interest.  So we decline to disturb the district court's determination.

### D. Attorney fees

Wendt also challenges the district court's award of attorney fees.  According to Wendt, Peterson's admission that she "has the ability to pay all of her own attorney fees" is "tantamount to a waiver on the issue."  Therefore, he claims "the district court abused its discretion [by] making [Wendt] pay her attorney fees."[2]

Wendt has not cited, and we have not found, any authority to support this view.  Nor do we think it has merit.[3]  Nor do we see any other grounds to conclude

---

[2] We review the award of attorney fees for an abuse of discretion.  *See Van Gundy v. Bolton*, No. 18-1838, 2019 WL 2145848, at *2 (Iowa Ct. App. May 15, 2019).

[3] Iowa Code section 600B.26 governs awards of attorney fees in actions like this.  Like all statutes, we find the meaning of section 600B.26 in the "words chosen by the legislature." *Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019).  Section 600B.26 states as follows: "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."  None of those words prohibit a court from awarding attorney fees to someone who can afford to pay.  Instead, section 600B.26 plainly gives the district court discretion ("the court

the district court abused its discretion by awarding fees to Peterson, the "prevailing party" below. *See* Iowa Code § 600B.26; *In re Myers*, 874 N.W.2d 679, 682 (Iowa Ct. App. 2015) ("The legislature has expressly provided courts with discretion to award attorney fees to the prevailing party in actions under section[ ] . . . 600B.26.").

### E. Appellate attorney fees

Finally, we consider Peterson's request for appellate attorney fees. Because Peterson is the "prevailing party" on appeal, we have discretion to award fees in Peterson's favor. *See* Iowa Code § 600B.26. And we believe an award is appropriate here. But the docket does not show an affidavit of Peterson's appellate fees. So we remand for the district court to award Peterson "reasonable attorney fees" for this appeal. *See id.*

### III. Conclusion

We affirm on all issues. We remand for the limited purpose of awarding appellate attorney fees to Peterson.

**AFFIRMED AND REMANDED.**

---

may") to award attorney fees to "the prevailing party," no matter whether they are rich or poor, able-to-pay or not. And we are "constitutionally prohibited" from editing the Code. *Hansen v. Haugh*, 149 N.W.2d 169, 241 (Iowa 1967); *see* Iowa Const. art. III, Of the Distribution of Powers, § 1. "The right to legislate is in the legislature and not in us." *Ctr. Twp. Sch. Dist. by Rollins v. Oakland Indep. Sch. Dist.*, 112 N.W.2d 665, 671 (Iowa 1962); *see* Iowa Const. art. III, Legislative Department, § 1 (power of general assembly). *But see* Iowa Const. art. III, § 16 (executive approval).