# IN THE COURT OF APPEALS OF IOWA

No. 21-0569
Filed September 1, 2021

**IN THE INTEREST OF L.B.,**
**Minor Child,**

**B.B., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mary J. Sokolovske, Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Dean A. Fankhauser of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Lessmann, L.L.P., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellant State of Iowa.

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., May, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAY, Judge.**

A father appeals the termination of his parental rights to his child, L.B. He argues grounds for termination were not proven, DHS did not make reasonable efforts to return the child home, and termination was not in the child's best interest. We affirm.

## I. Background Facts and Prior Proceedings

L.B. was born in 2014. Her father was in federal custody from 2014 through 2020. For most of her life, L.B. lived with her mother. In 2019, though, the Iowa Department of Human Services (DHS) learned the mother had assaulted the maternal grandmother in the presence of L.B. The mother also tested positive for methamphetamine. On May 11, 2019, L.B. was adjudicated as a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(a), (b), (c)(2), and (n) (2019). L.B. was placed with her maternal grandmother. DHS offered services, but there was little progress. In November 2019, the parents stipulated "that permanency for" L.B. "would be achieved by establishing a guardianship" with the maternal grandmother. Also in November, the juvenile court entered a permanency order "pursuant to said stipulation" appointing the maternal grandmother as guardian and placing L.B. in her custody. In December, the probate court issued letters of appointment to the maternal grandmother. The juvenile court then entered an order closing the CINA proceeding.

Before long, there was conflict between the mother and the maternal grandmother. The mother believed her rights were superior to those of a guardian. On at least one occasion, the mother refused to return L.B. Local law enforcement sided with the mother despite the grandmother's status as the child's lawful

guardian. So the State obtained a removal order from the juvenile court. The State also filed a second CINA petition and a petition to terminate the parental rights of both parents. The juvenile court heard evidence on both. Ultimately, the court entered an order terminating the mother's parental rights, pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2020), and the father's parental rights, pursuant to section 232.116(1)(f) and (g). Because the court concluded termination was appropriate, the court declined to adjudicate L.B. as CINA "for a second time." Only the father appeals.

## II. Scope and Standard of Review

We generally review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "When the issue requires statutory interpretation, however, we review for correction of errors at law." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No.

19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). We also address any other arguments raised by a parent.

**III. Discussion**

The juvenile court found grounds to terminate the father's rights under Iowa Code section 232.116(1)(f) and (g). Paragraph (f) permits termination if:

> (1) The child is four years of age or older.
> (2) *The child has been adjudicated a child in need of assistance pursuant to section 232.96.*
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f) (emphasis added).

Paragraph (g) permits termination if:

> (1) *The child has been adjudicated a child in need of assistance pursuant to section 232.96.*
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

*Id.* § 232.116(1)(g) (emphasis added).

The father challenges the second element of paragraph (f) and the first element of paragraph (g). These elements are identical. Each requires a finding that "[t]he child has been adjudicated a child in need of assistance pursuant to section 232.96." *Id.* § 232.116(1)(f)(2), (g)(1).

Following our de novo review, we conclude this requirement has been met. It is undisputed that L.B. was adjudicated CINA in May 2019. So there is no doubt she "has been adjudicated" CINA. *See id.* § 232.116(1)(f)(2), (g)(1).

But the father argues that, because the prior CINA proceeding has been closed, the juvenile court could not rely on the May 2019 adjudication. The attorney general agrees with the father. Together, they argue the juvenile court needed to adjudicate L.B. *a second time* before paragraphs (f) or (g) could apply.

L.B.'s attorney disagrees. So does the county attorney. They both contend that the single CINA adjudication in May 2019 was sufficient.

To decide which view is correct, we look to the words of the statute. *In re H.W.*, 961 N.W.2d 138, 141 (Iowa Ct. App. 2021) ("We find the meaning of chapter 232 in its words."). When the legislature defines its words, "those definitions bind us." *J.C.*, 857 N.W.2d at 500. Otherwise, we generally give a statute's words "their common, ordinary meaning in the context within which they are used." *H.W.*, 961 N.W.2d at 142–43 (citation omitted).

In paragraphs (f) and (g), the legislature chose to require a finding that "[t]he child *has been adjudicated* a child in need of assistance pursuant to section 232.96." Iowa Code § 232.116(1)(f)(2), (g)(1) (emphasis added). The "common, ordinary meaning" of these words is that the child must have been adjudicated CINA at some time *before* ("has been") termination. But nothing in paragraphs (f) or (g) requires the child to have been adjudicated "twice," or "recently," or "in a case that remains open," or "currently," as the father and the attorney general

suggest.[1] Moreover, we are constitutionally prohibited from adding those words—those new requirements—to the statute. Iowa Const. art. III., § 1. "The right to legislate is in the legislature and not in us." *Ctr. Twp. Sch. Dist. by Rollins v. Oakland Indep. Sch. Dist.*, 112 N.W.2d 665, 671 (Iowa 1962).

We move on to the father's reasonable-efforts challenge. Iowa Code section 232.102(7) requires DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Applying this language here, we conclude the father's reasonable-efforts challenge fails for two reasons. First, we conclude that DHS made ample efforts to reunite the child with the parents during the 2019 CINA case. Second, we agree with L.B.'s attorney that section 232.102(7)

---

[1] We respectfully disagree with the dissent's argument concerning section 232.109. Section 232.109 does not alter the elements of section 232.116(1)(f) or (g) or otherwise require the State to prove there was an open CINA case when the termination petition was filed. Section 232.109 has a completely different function. It prohibits courts from terminating parental rights under *a different chapter* of the Iowa Code ("except under the provisions of this chapter")—namely, chapter 600A—if two events have occurred: (1) "the court has made an order" adjudicating the child CINA; and (2) "the order is in force at the time a petition for termination is filed." *See also* Iowa Code § 600A.5(2) ("If a juvenile court has made an order pertaining to a minor child under chapter 232, subchapter III, and that order is still in force, the termination proceedings shall be conducted pursuant to the provisions of chapter 232, subchapter IV."). But this case does not involve a termination under chapter 600A or any other chapter "except" chapter 232. So section 232.109 is not relevant. *See In re H.J.E.*, 359 N.W.2d 471, 474 (Iowa 1984) (relying on sections 232.109 and 600A.5(2) to note "[c]hapter 232 is the exclusive means of termination when a CINA proceeding is in progress" and conclude that a "chapter 600A termination was not available" because "the child had been adjudicated a child in need of assistance, and the dispositional order had not expired"); *see also In re H.S.*, 805 N.W.2d 737, 740 n.3 (Iowa 2011) (noting that, although "[c]hapter 600A . . . authorizes the filing of termination petitions by parents," if "the children have the status of CINA, any termination proceedings must be conducted pursuant to chapter 232" (citing Iowa Code §§ 232.109, 600A.5(1)(a), (2); *H.J.E.*, 359 N.W.2d at 474)).

does not say to return the child to a parent's home. Rather, it provides that the child should be returned to the **child's** home. It is undisputed that there is a valid guardianship order in this case, which means that the child's home would be the home of the guardian, not a parent. Therefore, the plain language of this statute would require DHS to make efforts for L.B. to remain in the guardian's home. What [the father] is asking this court to do is to close its eyes and pretend that the guardianship order does not exist. This court cannot and should not do this.

Finally, we address the father's contention that termination is not in L.B.'s best interest. When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We agree with these findings by the juvenile court:

[L.B.'s] parents have not made any significant progress toward reunification since the guardianship was established. The issues of substance abuse by both parents . . . , domestic violence by [the mother], mental health issues by [the mother] and lack of involvement by [the father] over the years with [L.B.] still exist as obstacles to [L.B.] being returned to their care. The court finds that it is in the best interest of [L.B.] to terminate her parents' parental rights so that she can continue to enjoy the stability and permanency of her current placement.

## IV. Conclusion

We have considered all of the issues raised by the father, the attorney general, the county attorney, and L.B.'s attorney. Following our consideration of

those issues, and our de novo review of the record, we conclude the juvenile court was correct to terminate the father's parental rights.

**AFFIRMED.**

Doyle, S.J., concurs; Bower, C.J., dissents.

**BOWER, Chief Judge** (dissenting).

I respectfully dissent. Iowa Code section 232.109 (2020) provides:

> The juvenile court shall have exclusive jurisdiction over proceedings under this chapter to terminate a parent-child relationship and all parental rights with respect to a child. No such termination shall be ordered except under the provisions of this chapter if the court has made an order concerning the child pursuant to the provisions of subchapter III [child-in-need-of-assistance (CINA) proceedings] *and the order is in force at the time a petition for termination is filed.*

(Emphasis added.) There was no CINA order in force at the time the petition to terminate parental rights was filed here; therefore, the juvenile court was without authority to terminate the father's parental rights.

The guardian ad litem (GAL) argues L.B. "has been adjudicated" a CINA, relying on the 2019 adjudication. She asserts the father is wrong in stating this previous CINA adjudication was dismissed.

The guardianship here was established under the 2019 version of Iowa Code section 232.104(8)(b). That provision specifically divests the juvenile court of jurisdiction under chapter 232.[2] But, borrowing from the county attorney's argument in the juvenile court, the GAL asserts that permanency order was not terminated "regardless of the actual language used by the court." But we cannot disregard the actual language used by the court, and terminating the permanency order is *exactly* what the court's January 7, 2020 order did:

> IT IS THEREFORE ORDERED that the *permanency order entered herein is hereby terminated*, the child is discharged from the jurisdiction of the juvenile court, the Iowa Department of Human

---

[2] Had the juvenile court placed the child in a guardianship under paragraph (a), it would have retained jurisdiction. However, the court specifically invoked section 232.104(8)(b).

Services [(DHS)] is relieved of any further duties of supervision in the matter, counsel of record is hereby relieved of further duties of representation herein, all hearings scheduled before the juvenile court herein are canceled, and the juvenile court case(s) closed.

(Emphasis added.) The prior permanency order was terminated, and DHS was relieved of duties. We cannot unring that bell.

No doubt, the *guardianship* is open. And as of January 1, 2020, Iowa Code chapter 232D governs minor guardianships.[3] *See* 2019 Iowa Acts ch. 56, §§ 44, 45 (applying the new minor guardianship act to all established and pending guardianships). Section 232D.103 provides, "The juvenile court has exclusive jurisdiction in a guardianship proceeding concerning a minor who is alleged to be in need of a guardianship." The guardianship is distinct from CINA proceedings. Neither the county attorney nor DHS are parties to the guardianship. The filings in

---

[3] The GAL observes:

[E]ffective January 1, 2020, all guardianships of minors pending in probate court prior to that date, such as L.B.'s guardianship (which was under the jurisdiction of the probate court as of November 25, 2019), are now under the jurisdiction of the juvenile court once again under the new Chapter 232D. Therefore, the permanency order which created the guardianship on November 25, 2019, remains in full force and effect, despite the language of the court's January 7, 2020, order.

The first sentence is true. The jurisdiction of the guardianship has been transferred back to the juvenile court. Iowa Code § 232D.103 ("The juvenile court has exclusive jurisdiction in a guardianship proceeding concerning a minor who is alleged to be in need of a guardianship."). The guardianship was entered pursuant to the consent of the parents. *See id.* § 232D.203 (guardianship with parental consent). The guardian has statutory duties. *See id.* § 232D.402. And termination of a guardianship is governed by section 232D.503(2) ("The court shall terminate a guardianship established pursuant to section 232D.203 if the court finds that the basis for the guardianship set forth in section 232D.203 is not currently satisfied unless the court finds that the termination of the guardianship would be harmful to the minor and the minor's interest in continuation of the guardianship outweighs the interest of a parent of the minor in the termination of the guardianship.").

the guardianship are confidential, and the county attorney was required to obtain the court's permission to obtain the filings of the previous CINA.

The county attorney again invoked the jurisdiction of the juvenile court for purposes of chapter 232 CINA proceedings by requesting a temporary removal order under section 232.78 and filing a new CINA petition under section 232.87(1). But the juvenile court had not ruled on the pending CINA petition. There was no CINA "order in force at the time the termination petition [was] filed" as required by Iowa Code section 232.109. I would conclude the child has not been adjudicated a CINA for purposes of termination under section 232.116(1)(f)(2) or (g)(1). I would reverse and remand for further proceedings.