**IN THE COURT OF APPEALS OF IOWA**

No. 22-1926
Filed August 9, 2023

**COLIN SHAWN HALL,**
        Petitioner-Appellant,

**vs.**

**JENA JOANN WEISSENBURGER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Warren County, Richard B. Clogg,

Judge.


        A father appeals the custody, visitation, and tax dependency exemption

provisions of a district court order.  **AFFIRMED AS MODIFIED.**


        Andrea M. Flanagan of Flanagan Law Group, PLLC, Des Moines, for

appellant.

        Delaney J. Kozlowski and Matthew G. Sease of Sease & Wadding, Des

Moines, for appellee.


        Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Colin Hall appeals from a district court order concerning custody, visitation, and the award of the tax dependency exemption for his child with his former girlfriend, Jena Weissenburger. He argues the court should have ordered joint physical care of their child, R.J.W. He challenges several provisions of the order concerning visitation. And he also disagrees with the portion of the order concerning calculation of back child support and the ability of Jena to claim R.J.W. as a dependent for four consecutive years to compensate for any back support owed.

We determine the award of physical care of R.J.W. to Jena is in the child's best interests. The court's visitation schedule is appropriate with the exception of the deviation from the parties' pretrial stipulation regarding summer visitation. And awarding Jena four years of the tax dependency exemption for the child is inequitable. We deny Jena's request for appellate attorney fees. Accordingly, we affirm as modified.

I.      **Background Facts & Proceedings**

Colin and Jena began dating in 2018. The parties have never been married. Colin is a recruiter for the National Guard. Jena is a registered nurse, and at the time of trial she anticipated earning an advanced degree in May 2023 that would allow her to begin work as a nurse practitioner. Colin has two children from a prior marriage. His former wife has physical care of those two children, and Colin has a specified visitation schedule.

Jena gave birth to R.J.W. in October 2019. Colin was involved during the pregnancy and attended the birth. But the parties' relationship quickly soured after

R.J.W.'s birth. Colin and Jenna initially separated in December and after unsuccessful attempts to repair the relationship, they separated permanently in May 2020. Colin was deployed overseas from September 2020 until July 2021. While deployed, Colin was generally consistent in maintaining contact with Jena and R.J.W.

Jena has been the primary caregiver for R.J.W. While Jena and Colin have the ability to communicate in a civil manner, text messages submitted at trial show Colin's aggressive communications to Jena, including calling her "a psychopath" and "the enemy." At trial, Jena expressed concerns over Colin's drinking and a past suicidal statement. Jena also testified to two unwanted sexual advances Colin made toward Jena.

In July 2020, Colin petitioned to establish custody, visitation, and support. Prior to trial, the district court accepted the parties' stipulation on some issues, including the award of joint legal custody and two weeks of uninterrupted summer visitation to both parents. Following trial, the court awarded Jena physical care of R.J.W. The court reduced the amount of visitation available to Colin from what was awarded in the temporary order. And the court reduced the amount of summer visitation from the parties' pretrial stipulation. While the parties generally were to alternate years in which they could claim R.J.W. as a dependent for income tax purposes, the court provided Jena four consecutive years of claiming the child as a dependent to make up for back child support pre-dating the court's order on temporary matters. Colin now appeals.

**II.     Standard of Review**

Because custody cases are tried in equity, our review is de novo.  Iowa R. App. P. 6.907.  While we give weight to the factual findings of the district court, we are not bound by them.  *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

**III.    Discussion**

**A.     Physical Care**

Colin appeals the district court's order granting Jena physical care of R.J.W. rather than his request for joint physical care.  He claims the court improperly failed to state its reasoning for granting Jena physical care of the child.  He also asserts the decision is not in the child's best interests.

To begin, Colin claims the court disregarded four factors set out in *In re Marriage of Hansen*, 733 N.W.2d 683 (Iowa 2007) and failed to explain its decision to grant Jena physical care of the child.[1]  Once a parent requests joint physical care, the court's decision to award physical care to one parent "*shall* be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child."  Iowa Code § 598.41(5)(a) (emphasis added).

---

[1] Iowa Code chapter 600B (2020) governs actions to establish paternity, custody, and care of children to never married parents.  However, when determining custody and physical care of children to  ever married parents we consider the same factors as those used in dissolution proceedings.  *See* Iowa Code § 600B.40(1) (providing "section 598.41 shall apply" to chapter 600B proceedings); *Stanley v. Winters*, No. 22-1552, 2023 WL 2396539, at *2 (Iowa Ct. App. Mar. 8, 2023).

We agree with Colin that such an explanation is lacking here. That said, we believe the record is sufficient for this court to review the court's physical care determination. *See Bowman v. Doughman*, No. 22-0464, 2022 WL 4361806, at *1 (Iowa Ct. App. Sept. 21, 2022) (reviewing a district court's order on physical care despite "any analysis as to the reasons considered"); *In re Marriage of Hite*, No. 06-1944, 2007 WL 4191971, at *1 (Iowa Ct. App. Nov. 29, 2007) (reviewing physical care provisions of a decree despite the fact "the district court's decree does not include any explanation of why the joint physical option was rejected" as required by statute).

Turning to the merits of the claim, we begin by highlighting that "[p]hysical care issues are not to be resolved based upon perceived fairness to the spouses, but primarily upon what is best for the child." *Hansen*, 733 N.W.2d at 695. In considering what is in the child's best interests, we examine the factors found in section 598.41(3), as well as "stability and continuity of caregiving," "the ability of spouses to communicate and show mutual respect," "the degree of conflict between parents," and "the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 696–99.

Jena acted as the primary caregiver for R.J.W. throughout the child's young life. *See id.* at 697–98 ("[W]here one spouse has been the primary caregiver, the likelihood that joint physical care may be disruptive on the emotional development of the children increases."). We recognize that this was a result, at least in part, because of Colin's deployment overseas. But as noted, we are guided the best interest of the child, not upon perceived fairness to either parent.

While the parents have communicated in the past in a civil manner, Jena submitted disrespectful text messages from Colin as trial exhibits in which Colin referred to Jena as a "psychopath" and "the enemy." We are concerned about the unwanted sexual contact perpetrated by Colin on Jena. And Colin and Jena live in separate cities—Colin in Indianola, Jena in Grimes, an estimated thirty-five minutes each way. Joint physical care would require the child to spend a significant amount to time travelling between the parents' homes. The parties appear to agree that the child will attend school in the Dallas Center-Grimes Community School District in a few short years, which would also create additional travel time for the child. After considering the relevant factors, we conclude the best interest of the child weighs toward affirming the district court's decision granting Jena physical care of R.J.W.

### B. Visitation—Generally

Colin asserts the visitation schedule is inequitable because the court disregarded R.J.W.'s relationship with the child's half-siblings. At trial, Colin sought to have visitation on six of every fourteen nights, matching the schedule he has with his two other children from a prior marriage. But the district court rejected this request, instead ordering visitation for a total of three nights over a fourteen day period.

First, we note a discrepancy between the court's written order and a chart the court utilized to demonstrate the schedule. Because the written order is more specific, we interpret such as the court's final order. Colin therefore has visitation:

    a. Every other Wednesday after school (or 5 p.m. if no school) until 8 p.m.

        b. On the week Colin does not have parenting time with the child on the weekend, he shall have Wednesday overnight.
        c. Every other weekend from Friday after school (or at 5 p.m. if no school) until Sunday at 6 p.m.

"Generally, we have considered liberal visitation rights to be in a child's best interest." *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994). "Iowa courts prefer not to separate siblings, including half-siblings. The presumption that siblings should reside together may be overcome only if their separation 'may better promote the long-range interests of the children.'" *Thomas v. Stotts*, No. 20-0659, 2021 WL 210985, at *3 (Iowa Ct. App. Jan. 21, 2021) (internal citations omitted). One factor that may be considered in weighing the child's long-term interests is the relative ages of the children. *See In re Marriage of Brauer*, 511 N.W.2d 645, 647 (Iowa Ct. App. 1993). For instance, a recent opinion by this court found the child's best interests were served by awarding physical care to one parent despite the separation it would cause from a half-sibling because the children were about ten years apart in age and the child at interest was only a few years old. *In re Marriage of Frey*, No. 21-0448, 2022 WL 108952, at *3 (Iowa Ct. App. Jan. 12, 2022).

We find this case to be substantially similar to *Frey*. R.J.W. is young—two years old at the time of the trial. In contrast, her half-siblings were eleven and seven years old. The visitation schedule established by the district court still permits the children to see each other on at least three nights every fourteen days. *See id.* (finding continued visitation rights provided sufficient opportunity for the children to bond). And R.J.W. has never resided with these siblings but saw them

when Colin had parenting time with these two children. As such, the schedule does not sever their relationship.

Moreover, Colin's desired schedule is not in R.J.W.'s best interests. Providing Colin six overnights every fourteen days functionally provides him joint physical care rights which, as described above, is not in the child's best interests. Such an arrangement would require significant amount of travel time for the child. In contrast, the current schedule provides the child substantial time with her father and half-siblings. We affirm the district court's order as to the general visitation schedule.

### C.  Visitation—Summer

Colin claims the court erred by ignoring the parties' stipulation on summer visitation. At trial, Colin's counsel described the relevant portion of the stipulation: "I think we also agree that each parent should get two weeks of uninterrupted time. We did not discuss whether they were consecutive or not." Jena's counsel agreed, "That is my understanding of the parties' agreement." Jena also confirmed that she agreed the stipulation included "two weeks of uninterrupted visitation in the summer." The court's final order included the following: "The court approved the parties' stipulation dictated into the record at trial. Specifically . . . that each party should have two weeks of uninterrupted summer visitation." Despite incorporating that stipulation, the court ordered:

> Until R.J.W. starts First Grade, each parent shall be entitled to exercise two, four consecutive day periods of inclusive parenting time. When R.J.W. begins Kindergarten and each year thereafter, each parent shall be entitled to exercise two[,] seven consecutive

day periods inclusive of parenting time during the minor child's summer vacation from school.[2]

A stipulation "becomes a final contract when it is accepted and approved by the court." *In re Marriage of Mihm*, 842 N.W.2d 378, 384 (Iowa 2014) (quoting *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987)). "When the stipulation is merged in the dissolution decree it is interpreted and enforced as a final judgment of the court." *Lawson*, 409 N.W.2d at 182 (quoting *Prochelo v. Prochelo*, 346 N.W.2d 527, 529 (Iowa 1984)). Given the court's order approving the parties' stipulation as to summer visitation, the court should not have altered the provisions of the stipulation to limit visitation to two, four-day periods. We modify that portion of the decree to match the parties' stipulation. Each parent is entitled to two weeks uninterrupted summer visitation. To the extent that the parties believe that the stipulation is unclear as to whether the two weeks are consecutive, we determine that in the absence of an agreement between the parties to the contrary, the two weeks of summer visitation for each party shall be consecutive.

### D. Tax Dependency Exemption

Colin claims the court improperly granted Jena the right to claim R.J.W. as a dependent for tax purposes for four years to compensate for back child support totaling $7000 incurred in the time leading up to the temporary order. Colin asserts the court should have granted the parents the right to claim R.J.W. as a dependent on alternating years.

As Jena points out:

---

[2] We recognize the confusion caused by the court's order changing the schedule once R.J.W. starts either first grade or kindergarten. But given our resolution on this issue, we need not decide which year the court intended.

> The court may order the father to pay amounts the court deems appropriate for the past support and maintenance of the child and for the reasonable and necessary expenses incurred by or for the mother in connection with prenatal care, the birth of the child, and postnatal care of the child and the mother, and other medical support as defined in section 252E.1.

Iowa Code § 600B.25(1); *see also Markey v. Carney*, 705 N.W.2d 13, 24 (Iowa 2005).

But here, the court's order lacks findings and the record lacks evidentiary support for this award. Prior to the court entering an order on temporary matters, Jena submitted two affidavits, one signed by herself, the other by a daycare provider, purporting to establish Colin owed about $6500 in support. The affidavits are not supported by other documentary evidence and were not offered at trial.[3] At trial, Jena claimed Colin owed about $1500 in back child support and $1000 in attorney fees.[4] This amount arises from the support ordered in the temporary order. Given the lack of evidence that Colin owed $7000 of support before the temporary order, providing Jenna four consecutive years of claiming R.J.W. as a dependent is inequitable. We modify the provision to provide each parent may claim R.J.W. as a dependent on alternating years—Jena may claim R.J.W. as a dependent in even-numbered years, Colin may claim in odd-numbered years

---

[3] Jena's temporary affidavit acknowledged that Colin paid one-half of the daycare expenses for a period of time and made payments to Jena while deployed of about $1900.

[4] The district court established a schedule for Colin to pay $200 a month to discharge his debt on back child support and also ordered him to pay the $1000 in attorney fees within sixty days.

provided he is current in his child support for the years in which he has a right to claim the child.[5]

### E.    Appellate Attorney Fees

Jena requests an award of $5000 in appellate attorney fees.

> Iowa Code section 600B.26 governs awards of attorney fees in actions like this.  Like all statutes, we find the meaning of section 600B.26 in the "words chosen by the legislature."  *Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019).  Section 600B.26 states as follows: "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."  None of those words prohibit a court from awarding attorney fees to someone who can afford to pay.  Instead, section 600B.26 plainly gives the district court discretion ("the court may") to award attorney fees to "the prevailing party," no matter whether they are rich or poor, able-to-pay or not.  And we are "constitutionally prohibited" from editing the Code.  *Hansen v. Haugh*, 149 N.W.2d 169, 241 (Iowa 1967); *see* Iowa Const. art. III, Of the Distribution of Powers, § 1.  "The right to legislate is in the legislature and not in us." *Ctr. Twp. Sch. Dist. by Rollins v. Oakland Indep. Sch. Dist.*, 112 N.W.2d 665, 671 (Iowa 1962); *see* Iowa Const. art. III, Legislative Department, § 1 (power of general assembly).  *But see* Iowa Const. art. III, § 16 (executive approval).

*Wendt v. Peterson*, No. 20-0060, 2020 WL 4814153, at *4 n.3 (Iowa Ct. App. Aug. 19, 2020).

Because we do not interpret either party as the prevailing party on appeal, we decline to award Jena appellate attorney fees.

**AFFIRMED AS MODIFIED.**

---

[5] "The 'general rule' is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption.  However, courts have the authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'"  *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005) (internal citations omitted).